Filed 2/19/16  Rustam v. Golditch CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MARDI A. RUSTAM,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>BERNARD GOLDITCH,<br><br>        Defendant and Respondent. | B260145<br><br>(Los Angeles County<br>Super. Ct. No. EC061967) |

        APPEAL from a judgment and post-judgment order of the Superior Court of Los Angeles County, Donna Fields Goldstein, Judge.  Affirmed.

        Obagi Law Group and Zein E. Obagi, Jr., for Plaintiff and Appellant.

        Greenberg & Bass and James R. Felton for Defendant and Respondent.

━━━━━━━━━━

Appellant Mardi Rustam filed the underlying action for usury and financial elder abuse against Bernard Golditch arising from a deed of trust attached to Rustam's property. The subject deed of trust secured a loan between the individual who had sold the property to Rustam and Golditch. The loan accrued interest at 14 percent annually. The trial court entered summary judgment for Golditch on the grounds (1) the loan was exempt from usury law because it was arranged by a licensed broker, and (2) Rustam had no standing to assert usury because he was not the original borrower. Rustam filed a motion for reconsideration and motion for new trial, both of which were denied. The trial court awarded attorney fees to Golditch. Rustam appeals and we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Golditch Promissory Note*

Prior to 2008, Golditch worked for Martin Yacoobian, Jr. as an accountant, preparing Yacoobian's tax returns. On December 8, 2008, Golditch's business, Ontario Development Partners (Ontario), and Yacoobian entered into a promissory note whereby Ontario loaned Yacoobian $500,000 (the "Golditch Note"). The note reflected annual interest of 14 percent, which increased to 19 percent in the event of default. The debt was secured by a deed of trust on Yacoobian's property located at 10701 Riverside Drive, North Hollywood, California (the "Property"). The Property was also subject to a senior deed of trust held by Manufacturer's Bank, which secured a promissory note for $600,000 (the "Bank Note"). On April 6, 2009, Ontario assigned the junior deed of trust to Golditch. The assignment was recorded.

Yacoobian then sold the Property to Rustam and promised to remain liable for both the Golditch Note and Bank Note. Rustam paid $500,000 for the Property. On March 13, 2009, a grant deed was recorded transferring ownership of the Property from Yacoobian to Athen Enterprises, a fictitious business name registered to Rustam. That same day, a third deed of trust was recorded providing that Yacoobian would pay all amounts due under the Golditch and Bank Notes.

On August 3, 2010, Yacoobian filed for bankruptcy. On November 30, 2011, Manufacturer's Bank recorded a notice of default on the Property. On May 8, 2012,

2

Rustam's brother, Mohammed Rustam (Mohammed), purchased Manufacturer's Bank's first deed of trust.

2.    *The Payoff Action*

Golditch wanted to purchase the first deed of trust from Mohammed. When Mohammed refused to provide payoff information to Golditch, Golditch filed an action against Mohammed and Rustam seeking a payoff demand statement pursuant to Civil Code section 2943 (Payoff Action).[1] Rustam filed a cross-complaint for declaratory relief as to the Golditch Note. Rustam also alleged that Golditch had fraudulently induced Rustam into purchasing the Property by preparing financial statements misrepresenting the financial strength of Yacoobian's business entity.

On June 18, 2012, Golditch recorded a notice of default on the Property. On February 4, 2013, Golditch recorded a notice of trustee's sale. Rustam then applied for a temporary restraining order (TRO) in the Payoff Action to prevent the foreclosure sale on the grounds, inter alia, the Golditch Note was usurious. The court in the Payoff Action granted the request for a TRO and set the matter for hearing on a preliminary injunction. On March 15, 2013, the court denied the application for a preliminary injunction and dissolved the TRO.[2]

On May 2, 2013, Golditch, Mohammed and Rustam settled the Payoff Action. The written settlement agreement (Settlement Agreement) provided: "[Mohammed] will purchase the [Golditch Note] for $916[,]000 paid by cashier's check(s) . . . [¶] [and] [u]pon deposit, acceptance and clearance of the funds at the bank chosen by [Golditch], [Golditch] will assign the note without representation, warranties or recourse, and deeds of trust on [the Property] and certain Acton lots to [Mohammed]. [¶] [The] [p]arties agree

---

[1]    Civil Code section 2943 defines a "payoff demand statement" as "a written statement, prepared in response to a written demand made by an entitled person or authorized agent, setting forth the amounts required as of the date of preparation by the beneficiary, to fully satisfy all obligations secured by the loan that is the subject of the payoff demand statement." (Civ. Code, § 2943, subd. (a)(5).)

[2]    The record does not reveal the court's reasons for these rulings.

to promptly file dismissals with prejudice of the [Payoff Action]. . . . [¶] [The] [p]arties release each other from any claims, liabilities, or causes of action with respect to the [P]roperty and agree to waive the rights and privileges under section 1542 of the California Civil Code . . . ."

3.     *The Present Action*

Approximately one and one half years later, Rustam filed the present action for usury and elder abuse against Golditch.[3] The complaint omitted that Mohammed had purchased the Golditch Note; instead, it alleged that *Rustam* had "paid off" the Golditch Note in the amount of $916,000, which included $416,000 of interest charged at 18.79 percent. Both causes of action were based on the alleged usurious interest rate charged by Golditch.

Golditch demurred on the ground that res judicata barred both claims because Rustam had "raised" the issue of usury in the Payoff Action. Golditch also moved for sanctions based on the alleged frivolous nature of Rustam's claims. The court overruled the demurrer and held that the issues raised and parties involved in the Payoff Action were not identical with those in the present action. The court also denied the motion for sanctions on the ground the claims were not "objectively unreasonable."

Golditch answered the complaint, denying its allegations. Golditch then moved for summary judgment.[4] Golditch first argued that Rustam did not have standing to allege usury because he was not the original borrower of the loan. Second, Golditch argued that the loan was exempt from usury law because it was arranged by a licensed broker. Third, Golditch argued that the sale of the Golditch Note to Mohammed was not subject to usury law because that transaction was not a loan or a forbearance agreement.

---

[3]     Ontario and Michael Narvid "d/b/a Ontario Development Partners" were also named as defendants and were later dismissed from the case.

[4]     Rustam also filed a motion for summary judgment, which the court denied. That ruling is not at issue on appeal.

4

In support of his motion, Golditch submitted evidence that a licensed broker, V.I.P. Trust Deed Company (V.I.P.), arranged the loan:  V.I.P. obtained the loan application and related documents, V.I.P. procured the preliminary title report and "worked with the borrower and title company to obtain necessary documents to provide clear title," "V.I.P. researched the subject property and interacted with the lender to provide them with proper documentation and to obtain loan funds," "V.I.P. interacted with the Title Company to provide the Deed of Trust for recording," and V.I.P. provided Yacoobian with various "statements" at the time the loan was executed.  Rustam did not dispute these facts.

Golditch also provided evidence that "V.I.P. prepared all loan documents and disclosures and handled the closing of the loan and serviced the loan."  Rustam disputed these facts only to the extent that "Golditch and Yacoobian negotiated the loan terms directly before they were sent to V.I.P. for formalization."

In Rustam's opposition, he argued that he had standing to assert usury because the "$916,000.00 payment was a usurious agreement for forbearance" as "[t]he effect of the settlement was an agreement that [Golditch] would not go forward with the trustee's sale of the property."  He also argued the Golditch Note was not "arranged" by a licensed broker because V.I.P. did not introduce Yacoobian to Golditch, V.I.P. did not negotiate the material terms of the loan, V.I.P. did not assist Yacoobian in filling out the loan application, and V.I.P. did not conduct a title search.

On September 5, 2014, the court granted summary judgment on the following grounds:  (1) Rustam lacked standing to assert usury because he was not the original borrower; (2) the loan was exempt from usury law because undisputed evidence established that a licensed broker arranged the loan; and (3) the elder abuse claim likewise failed because it was based on the alleged usury.[5]

---

[5]     The court's ruling did not respond to Golditch's argument that "[b]ecause [Mohammed] purchased the note, [Rustam] cannot be deemed to have been forced to pay the note."

Judgment was entered on September 15, 2014, and, two days later, Rustam filed a motion for reconsideration based on a pleading filed in 2012 in Yacoobian's bankruptcy proceeding. Rustam argued that these "newly discovered facts . . . prove that . . . Golditch charged the elderly Rustam a 26.76% annual interest rate; one far higher than the 19% annual interest rate authorized by the Note." Rustam referred to Golditch's sale of the note to Mohammed as the "forbearance" and calculated the interest rate "charged" based on the difference between the note's sale price ($916,000) and the original amount of the loan ($500,000). The court denied the motion on the ground that "[t]he entry of judgment divests the trial court of authority to rule on a motion for reconsideration."

On October 3, 2014, Rustam filed a motion for new trial on the grounds that (1) "newly discovered" facts contained in the 2012 bankruptcy pleading showed that Golditch charged Rustam annual interest of 26.76 percent when he sold the Golditch Note to Mohammed, and (2) the court erred in "requiring [Rustam] to prove the exact interest rate that was charged" when the Golditch Note was sold to Mohammed. The trial court denied the motion on the grounds, inter alia, that (1) the "newly discovered" facts were, in fact, known to Rustam prior to the filing of this action, and (2) "the parties had agreed through a real estate broker, VIP, that [Golditch] would sell a note and deed of trust to [Rustam] in return for [Rustam] paying $916,000."[6]

Golditch moved for attorney fees under a fee provision in the Golditch Note. Golditch also filed a declaration by his counsel with billing records showing $50,212.50 in fees. Counsel's declaration further stated "this case was almost entirely about usury. The elder abuse claim was a tag-along claim that had no viability unless the usury claim succeeded. As a result, my client suggests that the elder abuse claim be entitled to a $1,000 apportionment of the total attorney's fees incurred in this matter." Golditch also filed a verified memorandum of costs seeking reimbursement of $3,857.25 in costs other than attorney fees.

---

**6** In this statement, the court confused the original loan transaction (involving V.I.P.) with the $916,000 sale of the Golditch Note to Mohammed. However, as we explain below, there was no miscarriage of justice warranting reversal of the order.

6

In opposition to the motion, Rustam argued that Golditch could not recover fees under the Golditch Note because (1) Golditch did not "prevail[] in a collection action on the note," and (2) Rustam was not a party to the note. Rustam further argued that Golditch had provided insufficient information as to whether the rates charged by the attorneys who had worked on the matter were reasonable. Golditch's counsel filed a supplemental declaration stating that his firm had billed an additional $4,244 in litigating the motions for reconsideration and new trial, and attaching additional billing records.

The court granted the motion, awarding attorney fees to Golditch in the amount of $53,456.50 ($50,212.50 plus $4,244 minus $1,000). The court apportioned $1,000 to the elder abuse claim and concluded "a review of the charges reveals that the attorney's fees are reasonable for this case." Rustam timely appealed from the judgment and order awarding fees.

## *CONTENTIONS*

Rustam contends the court erred in granting summary judgment because the sale of the Golditch Note to Mohammed was a forbearance to which usury laws apply. Similarly, Rustam argues that a valid claim for elder abuse was stated "because [Golditch] took and retained more money from [Rustam] than that which he was authorized to take . . . ." Rustam also argues the court abused its discretion in denying the motions for reconsideration and new trial because he had identified "newly discovered facts" showing that Golditch had charged Rustam 26.76 percent interest. Lastly, Rustam contends that Golditch was not entitled to attorney fees and the amount awarded was unreasonable.[7]

---

[7] Rustam also mentions that he is appealing from the court's order denying his request for sanctions. It appears he is referring to the court's order on April 11, 2014, denying *Golditch's* motion for sanctions, which he opposed and also requested sanctions, which were denied by the court. However, as Rustam has not supported his appeal of this order with any argument or citation to authority, it is deemed to have been abandoned. (See *Huntington Landmark Adult Community Assn. v. Ross* (1989) 213 Cal.App.3d 1012, 1021.)

7

1.      *Summary Judgment Was Properly Granted*

"[S]ummary judgment or summary adjudication is to be granted when there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law.  A defendant 'moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact.' [Citation.]  A defendant may meet this burden either by showing that one or more elements of a cause of action cannot be established or by showing that there is a complete defense.  [Citation.] . . . [¶] . . . [¶]  We review a summary judgment or summary adjudication ruling de novo to determine whether there is a triable issue as to any material fact and whether the moving party is entitled to judgment as a matter of law. [Citation.]" (*Mills v. U.S. Bank* (2008) 166 Cal.App.4th 871, 894-895.)

Rustam contends the trial court erred in granting summary judgment because (1) the $916,000 sale of the Golditch Note to Mohammed was a forbearance to which usury laws apply, and (2) the evidence established financial elder abuse because "[Golditch] took and retained more money from [Rustam] than that which he was authorized to take . . . ."  Rustam does not dispute the court's holding that he had no standing to allege usury with respect to the loan.[8]

"The California Constitution, article XV, section 1, states 'No person, association, copartnership or corporation shall by charging any fee, bonus, commission, discount or other compensation receive from a borrower more than the interest authorized by this section upon any loan or forbearance of any money, goods or things in action.'  [Fn.

---

[8]      Rustam does briefly argue that the court erred in finding that the loan was arranged by a licensed broker and, thus, exempt from usury law, because "V.I.P. did not introduce Golditch to Yacoobian."  However, as Rustam has not challenged the court's holding that he had no standing to allege usury with respect to the loan because he was not the original borrower, he has not shown that the alleged error constituted a miscarriage of justice warranting reversal.  (See *Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 574 ["[a] judgment may not be reversed on appeal . . . unless 'after an examination of the entire cause, including the evidence,' it appears the error caused a 'miscarriage of justice.'  [Citation.]"].)

omitted.]  The essential elements of usury are:  (1) The transaction must be a loan or forbearance; (2) the interest to be paid must exceed the statutory maximum; (3) the loan and interest must be absolutely repayable by the borrower; and (4) the lender must have a willful intent to enter into a usurious transaction."  (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 798  (*Ghirardo*).)

"Without a loan or forbearance, usury cannot exist.  [Citations.]"  (*Ghirardo*, *supra*, 8 Cal.4th at pp. 801-802.)  "A forbearance of money is the giving of further time for the payment of a debt or an agreement not to enforce a claim at its due date." (*Southwest Concrete Products v. Gosh Construction Corp.* (1990) 51 Cal.3d 701, 705.)

Here, Rustam does not argue that the sale of the Golditch Note resulted in "the giving of further time for the payment of a debt" or an agreement by Golditch "not to enforce a claim at its due date."  Nor could Rustam successfully make such an argument because this transaction simply resulted in the transfer of ownership of the Golditch Note from Golditch to Mohammed.  Golditch did not postpone the payment of the debt, nor could he, as he no longer owned the note.  Accordingly, Rustam failed to raise a triable issue of fact as to whether this transaction was a forbearance.

Next, Rustam argues that the evidence established financial elder abuse because Golditch "took more personal property from [Rustam] than he was contractually authorized to take" when Golditch sold the promissory note to Mohammed.  Welfare and Institutions Code section 15610.30 provides in relevant part:  "(a) 'Financial abuse' of an elder or dependent adult occurs when a person or entity does any of the following:  [¶] (1) Takes, secretes, appropriates, or retains real or personal property of an elder or dependent adult to a wrongful use or with intent to defraud, or both."  Here, the sale of the Golditch Note to Mohammed did not result in a "taking" of property from Rustam; Mohammed purchased the Golditch Note and received the right to enforce the note against Rustam.  Accordingly, Rustam failed to raise a triable issue of fact as to whether Golditch committed financial elder abuse.

9

2. *The Court Did Not Abuse Its Discretion in Denying Rustam's Motion for Reconsideration*

" 'Code of Civil Procedure section 1008, subdivision (a) provides that a party affected by a prior court order may, 'based upon new or different facts, circumstances, or law, make application to the same judge or court that made the order, to reconsider the matter and modify, amend, or revoke the prior order.' [Citation.] . . . . [¶] We review the denial of reconsideration . . . based on new evidence for abuse of discretion. [Citations.]" (*Shiffer v. CBS Corp.* (2015) 240 Cal.App.4th 246, 255.)

Rustam contends the court erred in denying the motion for reconsideration because the motion was properly based on "new facts." He acknowledges that the alleged "new facts" were contained in a document filed in 2012 in Yacoobian's bankruptcy case, a document which *Rustam* had also filed in the Payoff Action. However, Rustam argues that when he filed this document in the Payoff Action, the subject facts were merely "an incorporated allegation . . . which no party can rely [on] as probative evidence." That distinction is irrelevant for the purposes of Code of Civil Procedure section 1008. The subject facts did not constitute "new or different facts" within the meaning of section 1008 because they were known to Rustam when he opposed the motion for summary judgment in this case. (See *New York Times Co. v. Superior Court* (2005) 135 Cal.App.4th 206, 213.)

In addition, the motion was properly denied on procedural grounds as it was untimely filed after the entry of judgment. (See *Branner v. Regents of Univ. of Cal.* (2009) 175 Cal.App.4th 1043, 1048.) Accordingly, the trial court did not err in denying the motion for reconsideration.

3. *The Court Did Not Abuse Its Discretion in Denying the Motion for New Trial*

" 'Code of Civil Procedure section 657, subdivision 4 provides that a party may move for a new trial on a showing that there is "[n]ewly discovered evidence, material for the party making the application, which he could not, with reasonable diligence, have discovered and produced at the trial." ' [Citation.] [¶] . . . [¶] . . . We review the denial

10

of . . . new trial motions based on new evidence for abuse of discretion." (*Shiffer v. CBS Corp.*, *supra*, 240 Cal.App.4th 246, 255.)

Rustam contends that the court erred in denying the motion for new trial based on its finding that "the parties had agreed through a real estate broker, VIP, that [Golditch] would sell a note and deed of trust to [Rustam] in return for [Rustam] paying $916,000." Rustam is correct. The court confused the initial loan transaction with the $916,000 sale of the Golditch Note. While the court had previously made a finding that the initial transaction was exempt from usury law because it had been arranged by a licensed broker, V.I.P., the $916,000 sale of the Golditch Note to Mohammed occurred during the settlement of the Payoff Action and no broker was involved. In addition, the court misstated that Rustam paid $916,000 for the Golditch Note when, in fact, Mohammed purchased the note and Rustam remained liable for it.

However, Rustam has not shown that the court's error resulted in a miscarriage of justice warranting reversal. (See *Soule v. General Motors Corp.*, *supra*, 8 Cal.4th at p. 574 ["[a] judgment may not be reversed on appeal . . . unless 'after an examination of the entire cause, including the evidence,' it appears the error caused a 'miscarriage of justice.' [Citation.]" ].) Rustam's argument in the motion for new trial was that Golditch had illegally charged Rustam "a 26.76% interest rate when he demanded a $916,000.00 payoff to stave off a foreclosure . . . ." First, this supposedly newly discoverable fact was known to Rustam prior to the motion for summary judgment because he had filed the evidence in the Payoff Action. Second, this argument incorrectly characterizes the $916,000 sale of the Golditch Note to Mohammed as a forbearance under which Rustam paid Golditch to stop the foreclosure. In fact, Rustam did not pay Golditch any money in the transaction and remained liable for the entire debt; *Mohammed* paid Golditch $916,000 for the sale of the Golditch Note. Accordingly, Rustam did not show grounds for granting a new trial.

### 4. *The Attorney Fee Award Was Proper*

Rustam contends there was no legal basis for awarding attorney fees to Golditch and the amount awarded was unreasonable. "On appeal this court reviews a

11

determination of the legal basis for an award of attorney fees de novo as a question of law." (*G. Voskanian Construction, Inc. v. Alhambra Unified School Dist.* (2012) 204 Cal.App.4th 981, 995.) We review the trial court's decision as to what constitutes a reasonable fee for abuse of discretion. (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095.)

a. *The Court Properly Awarded Fees Under the Golditch Note*

The basis for the attorney fee award here was contractual: Golditch requested attorney fees under an attorney fee clause in the Golditch Note.[9] The Golditch Note, signed by Yacoobian, provided "I promise to pay all fees, costs and expenses, including attorney's fees, incurred by the holder in connection with the collection of this note, including, but without limitation, such attorney's fees, costs and expenses actually incurred if action be instituted on this note." The Golditch Note was attached to Rustam's complaint, which alleged that when "[Rustam] paid off the loan for $916,000.00," Golditch charged "usurious rates of 14% and 19% per annum [which] appear on the face of the [Golditch] Note."

Civil Code section 1717 provides "(a) In any action *on a contract*, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." (Italics added.)

"Where an attorney fee clause provides for an award of fees incurred in enforcing the contract, the prevailing party is entitled to fees for any action 'on the contract,' whether incurred offensively or defensively. [Citations.] Such fees are properly awarded under [Civil Code] section 1717 'to the extent that the action in fact is an action to

---

[9] We also note that although Rustam contends Golditch did not ask for fees in his answer, the record shows that the answer did seek "all costs of suit incurred herein." Attorney fees are allowable as costs when authorized by a contract. (Code Civ. Proc., § 1033.5, subd. (a)(10)(A).)

12

enforce—or avoid enforcement of—the specific contract.' [Citation.]" (*Turner v. Schultz* (2009) 175 Cal.App.4th 974, 980.) "California courts construe the term 'on the contract' liberally. ' "As long as the action 'involve[s]' a contract it is ' "on [the] contract" ' within the meaning of section 1717. [Citations.]" [Citations.]' [Citation.]" (*Ibid.*)

Rustam argues that his action did not arise under the Golditch Note and, furthermore, the attorney fee provision in that note "was limited to collections actions." We do not agree. Rustam's usury and elder abuse claims were explicitly based on Golditch's alleged charge of usurious interest rates under the Golditch Note. The complaint expressly alleged this and attached the Golditch Note. The complaint also sought the recovery of "costs and attorney's fees pursuant to . . . the [Golditch] Note . . . ." As Rustam sought to avoid enforcement of the Golditch Note on the ground the interest rates provided in that note were usurious, the action clearly " 'involve[d] [the] contract,' " and thus the trial court did not err in concluding this was an action "on the" Golditch Note under Civil Code section 1717. (*Turner v. Schultz, supra,* 175 Cal.App.4th at p. 980.) Furthermore, although the Golditch Note provided for the recovery of attorney fees in connection with the collection of the note, "California law is settled that a borrower's obligation to pay attorneys' fees incurred in the collection of the note includes attorneys' fees incurred in defending against a challenge to the underlying validity of the obligation." (*Finalco, Inc. v. Roosevelt* (1991) 235 Cal.App.3d 1301, 1308.)

Rustam next contends that Golditch could not recover fees under the Golditch Note because Rustam was not a party to the note and "could not have used it to recover attorneys' fees from Golditch." A nonsignatory plaintiff may be liable for fees under a contract to a signatory defendant when that plaintiff "would have been entitled to its fees if the plaintiff had prevailed." (*Sessions Payroll Management, Inc. v. Nobel Const. Co.* (2000) 84 Cal.App.4th 671, 679.) In support of Rustam's argument that as the nonsignatory plaintiff he could *not* have recovered fees under the Golditch note, Rustam argues only that Golditch "did nothing below to prove that [Rustam] would have been

13

entitled to attorneys' fees under the note." However, on appeal, we presume that the trial court's orders are correct and it is the *appellant's* burden to affirmatively show error. (See *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [" 'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' [Citations.]".]) Here, Rustam has not met his burden of establishing error by simply making the general contention that Golditch did "nothing below" to show that Rustam would have been entitled to fees had he prevailed on the complaint.

For the first time on appeal, Rustam argues that Golditch could not recover fees under the Golditch Note because (1) Golditch had sold the note to Mohammed and, therefore, "no longer possessed an interest in it so as to claim a benefit under it," and (2) in the Settlement Agreement, Golditch agreed to "assign the note without . . . recourse." "[W]e have discretion to consider a new theory on appeal when it is purely a matter of applying the law to undisputed facts. [Citations.]" (*Brown v. Boren* (1999) 74 Cal.App.4th 1303, 1316-1317.) Assuming Golditch had assigned all of his rights as a party to the Golditch Note, he was still entitled to recover fees once he was sued under that contract. Under the reciprocity test set forth by Civil Code section 1717, even one not a party to a contract may recover attorney fees as the prevailing party in an action on the contract. (See *Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 128-129.)

14

### b.     *The Court's Decision as to What Constituted a Reasonable Fee Was Not an Abuse of Discretion*

"Under [Civil Code section 1717], when a contract provides for an award of fees 'incurred to enforce that contract,' 'the party prevailing on the contract . . . shall be entitled to reasonable attorney's fees.' " (*Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.* (2012) 211 Cal.App.4th 230, 237.)  Rustam raises three challenges to the reasonableness of the fee award:  (1) he contends the court awarded fees based on billing records that did not identify the acting attorney; (2) Golditch failed to file a verified costs memorandum; and (3) the court should not have allocated only $1,000 to the elder abuse cause of action because "Golditch had to do cause-of-action specific work to defeat that cause of action."

In support of Golditch's motion for attorney fees, he submitted declarations by his attorney, James Felton, authenticating attached billing records.  These records showed that Felton's firm had billed Golditch $54,456.50.  In Felton's declaration, he stated "[a]ttached . . . is a true and correct copy of a ledger showing billings on this matter" and "[t]he facts recited in this declaration are known to me of my own personal knowledge . . . ."  The billing records did not identify the names of the attorneys who had billed each entry but only identified them by numbers, i.e. "Att[orne]y 3."  The court awarded Golditch all of the fees listed in those billing records minus $1,000 allocated to the elder abuse claim.

Rustam first argues the court erred in awarding Golditch fees based on billing records that did not identify "any of the billers, their experience, or even whether the various billers were licensed attorneys."  Generally, " ' "[t]he reasonable market value of the attorney's services is the measure of a reasonable hourly rate." ' " (*Nemecek & Cole v. Horn* (2012) 208 Cal.App.4th 641, 651.)  Rustam cites to *Contractors Labor Pool, Inc. v. Westway Contractors, Inc.* (1997) 53 Cal.App.4th 152 (*Westway*) for the proposition that the trial court "must" consider the following factors in awarding attorney fees:  "the nature of the litigation, its difficulty, the amount involved, and the skill required and success of the attorney's efforts, his or her learning, age and experience in the particular

15

type of work demanded, the intricacies and importance of the litigation, the labor and necessity for skilled legal training and ability in trying the cause, and the time consumed. [Citations.]" (*Id.* at p. 168.) However, *Westway* does not stand for the proposition that such factors are necessarily applicable in every case. To the contrary, case law recognizes that the determination of the amount of a reasonable attorney fee award "is necessarily ad hoc and must be resolved on the particular circumstances of each case." (*Meister v. Regents of University of California* (1998) 67 Cal.App.4th 437, 452; accord, *PLCM Group, Inc. v. Drexler*, *supra*, 22 Cal.4th at p. 1096 [trial court makes its determination after consideration of a number of various factors]; see, e.g. *Bernardi v. County of Monterey* (2008) 167 Cal.App.4th 1379, 1398 [absence of time records and billing statements do not deprive trial court of ability to make award of reasonable attorney fees].)

"[T]he trial court has broad authority to determine the amount of a reasonable fee" under Civil Code section 1717. (*PLCM Group, Inc. v. Drexler*, *supra*, 22 Cal.4th at p. 1095; see also *Montgomery v. Bio-Med Specialties, Inc.* (1986) 183 Cal.App.3d 1292, 1297 ["trial court has 'wide latitude in determining the amount of an award of attorney's fees' under Civil Code section 1717"].) The trial court's judgment " 'will not be disturbed unless the appellate court is convinced that it is clearly wrong' "—meaning that it abused its discretion. [Citations.]" (*PLCM Group, Inc. v. Drexler*, at p. 1095.)

Here, the trial court was not required to consider the individual experience of the attorneys listed in the billing records; the court could reasonably base its fee award on other factors such as "the nature of the litigation, its difficulty, the amount involved, and the skill required and success of the attorney's efforts . . . ." (*Westway*, *supra*, 53 Cal.App.4th at p. 168.) Contrary to Rustam's argument, it was reasonable for the trial court to infer that the attorneys referenced in the billing records were licensed. The court had ample opportunity to observe the attorneys' work in the action, which is apparent from the 11 volume appellant's appendix. Moreover, Rustam does not point to any particular billing entries or hourly rates that he contends were unreasonable. Accordingly, we cannot conclude that the fee award was "clearly wrong" merely because

16

the court did not consider the experience of each attorney who performed work on this case.

Second, although Rustam contends Golditch failed to file a verified costs memorandum, the appellant's appendix shows that such a document was filed with the trial court.

Lastly, Rustam's summary challenge to the court's apportionment of fees—based on the fact Golditch's counsel had to do "cause-of-action specific work to defeat that cause of action"—is without merit. "Once a trial court determines entitlement to an award of attorney fees, apportionment of that award rests within the court's sound discretion. [Citations.] We review the court's decisions for abuse of discretion. [Citation.] The court abuses its discretion whenever it exceeds the bounds of reason, all of the circumstances before it being considered. The burden is on the party complaining to establish that discretion was clearly abused and a miscarriage of justice resulted." (*Carver v. Chevron U.S.A., Inc.* (2004) 119 Cal.App.4th 498, 505.)

"Where a cause of action based on the contract providing for attorney's fees is joined with other causes of action beyond the contract, the prevailing party may recover attorney's fees . . . only as they relate to the contract action." (*Reynolds Metals Co. v. Alperson*, *supra*, 25 Cal.3d at p. 129.) However, "[a]ttorney's fees need not be apportioned when incurred . . . on an issue common to both a cause of action in which fees are proper and one in which they are not allowed." (*Id.* at pp. 129-130.) "Depending on the particular circumstances, however, a court may 'apportion fees even where the issues are connected, related or intertwined.' " (*In re Tobacco Cases I* (2013) 216 Cal.App.4th 570, 586.)

Here, although Rustam argues that Golditch's counsel did cause-of-action specific work to defend against the elder abuse cause of action, this does not establish that the $1,000 apportionment was unreasonable. Although Golditch was entitled to only those fees incurred defending the contract claim, the court could have reasonably found that *no* fees should be apportioned to the elder abuse claim as both claims were based on a common issue—usury. In addition, Rustam has not established that Golditch's counsel

17

did "cause-of-action specific work" worth more than $1,000 on the elder abuse claim. Accordingly, Rustam has not shown such an apportionment was unreasonable.[10]

### *DISPOSITION*

The judgment and post-judgment award of fees are affirmed. Respondent shall recover his costs on appeal.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**




EDMON, P. J.


We concur:



ALDRICH, J.




JONES, J.[*]

---

**10** Rustam also briefly argues that "the pleading of a request for attorneys' fees based on the note in his complaint, by counsel, d[id] not estop [Rustam] from arguing that [Golditch] would not have been entitled to attorneys' fees." We do not address that contention because the trial court expressly did not find estoppel.

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.