Filed 9/30/15  Unmodified opinion attached

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| JAMES SHIFFER et al.,<br><br>        Plaintiffs and Appellants,<br><br>v.<br><br>CBS CORPORATION,<br><br>        Defendant and Respondent. | A139388<br><br>(San Francisco City & County<br>Super. Ct. No. CGC12275967)<br><br>ORDER MODIFYING OPINION AND<br>DENYING REHEARING<br><br>[NO CHANGE IN JUDGMENT] |

BY THE COURT:

It is ordered that the opinion filed September 8, 2015, be modified as follows:

1. On page 6, the first sentence of the first paragraph is modified to read as follows:

        Additionally, Shiffer failed to raise a triable issue that whatever piping insulation work he did observe involved asbestos-containing, Westinghouse-supplied material.

There is no change in the judgment.

The petition for rehearing is denied.

Dated:

_____
                Humes, P. J.

1

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JAMES SHIFFER et al.,<br><br>        Plaintiffs and Appellants,<br><br>v.<br><br>CBS CORPORATION,<br><br>        Defendant and Respondent. | A139388<br><br>(San Francisco City & County<br>Super. Ct. No. CGC 12-275967) |

In this asbestos case, plaintiffs James Shiffer and his wife sued CBS Corporation, whose predecessor, Westinghouse, provided a turbine set and asbestos-containing insulation for a power plant where Shiffer worked for several months in 1969 and 1970. The trial court granted summary judgment to CBS. We affirm. Plaintiffs failed to produce evidence raising a triable issue that Shiffer suffered bystander exposure to Westinghouse asbestos while at the plant. The trial court also properly denied plaintiffs' motions for reconsideration and a new trial, because evidence of potential harm from re-entrainment of asbestos was not new and could have been presented in opposition to the original summary judgment motion.

## BACKGROUND

Plaintiffs sued numerous entities that allegedly caused Shiffer to be exposed to asbestos, eventually resulting in his developing mesothelioma. As to defendant CBS, they alleged Shiffer was exposed to asbestos-containing materials at the Ginna power plant in Rochester, New York in the summer of 1969. Shiffer's then employer, Pacific Gas & Electric, had sent him to Ginna in July of that year to train employees on the operation of Westinghouse equipment being installed in the plant.

Westinghouse had sold Ginna a turbine generator set and insulation, including blanket, block, and plastic insulation for the turbine and certain related piping, namely cross-over and cross-under piping. Westinghouse began shipping the equipment in July of 1968, a year before Shiffer arrived. Installation took place during 1968 and 1969. CBS's person most knowledgeable for the case, Douglas Ware, conceded at his deposition that the blanket, block, and plastic insulation, including that used on cross-over and cross-under piping, contained asbestos.

Reports, each labeled "Field Report, Westinghouse Form" and "Steam Service Department," recorded progress on the installation. With respect to the insulation work, these reports stated the following: During the week of May 12, 1969, insulators were on strike and the high-pressure turbine cylinder and cross-over pipes were not yet insulated. By the week of June 9, a team of insulators was back on the job. Insulators continued work on the high-pressure turbine cylinder and cross-over pipes through the weeks of June 16, July 7, July 14, and July 21. But as of June 24—before Shiffer arrived in July—the turbine had been "hot functional" and the main, 2-inch-thick layer of insulation would have been in place. During the week of July 21, work continued on the "insulation of H.P., Crossover and Crossunder piping, drains, and glands." As the project entered the week of August 4, "insulators [were] near completion of insulation of the high-pressure and cross-over piping." The final report in the record, for the week of August 11, suggests insulation was still incomplete, stating "due to job conditions, only two insulators are working on the Turbine contract."

At his September 2012 deposition, Shiffer testified when he arrived at Ginna in July of 1969, "all of the major components in the plant were installed" but "there was the last stages of construction going on." His "recollection [was] that the turbine insulation specifically was already put on." As he would "wander around the plant . . . there was a small amount of insulation. It would have been piping insulation. . . . But the main turbine insulation or steam line insulation was already installed." He then reiterated "the turbine and its insulation were already installed." And again: the generators/heat exchanges "were insulated prior to my arrival;" the "main steam lines were . . . already

2

insulated," though he saw "drains and smaller auxiliary lines" getting insulated. Although Shiffer observed these things while walking the plant, his workstation was in another building, separate from the turbine building.

Plaintiffs took Ware's deposition six months later, on March 5, 2013, and Ware, as noted, conceded the presence of asbestos in the cross-over and cross-under pipe insulation. There is nothing from Ware, however, about the nature of the insulation of any other kinds of pipes. Ware took no issue with the installation progress revealed in the previously-produced Westinghouse progress reports.

Shiffer then filed a declaration dated March 13, 2013 (nearly two weeks after Ware's deposition) in opposition to CBS's motion for summary judgment. In it, Shiffer was far less specific about his observations than he had been during his deposition six months earlier. Shiffer stated that when he arrived at Ginna in July 1969, "construction" was still in progress, including "insulators insulating piping in the turbine building." He further declared he had to enter the turbine building almost every day to educate himself about the plant to better conduct his training work.

There is no dispute Shiffer did not repair or maintain any Westinghouse equipment, and did not install or remove any insulation material himself. Nor is there any dispute that no already-installed insulation was removed or disturbed during Shiffer's time at Ginna.

Plaintiffs' expert, Charles Ay, declared the installation of piping insulation containing asbestos creates "large amounts of respirable asbestos dust as the material is cut, manipulated, and handled." Ay further opined, based on his training, education and experience, the insulation work documented on the Westinghouse forms would have "created magnitudes of asbestos-containing dust throughout the work area." The trial court excluded this latter statement on objection it was vague and speculative. Though Ay reviewed other discovery materials, he admittedly did not review Shiffer's deposition testimony or his declaration.

Another of plaintiffs' experts, Christopher Depasquale, considered Shiffer's declaration in which Shiffer stated he had observed construction at Ginna, including the

3

insulation of piping in the turbine building, and had spent time in this area while educating himself and conducting training.  Assuming insulation work continued into August 1969, as documented by the Westinghouse work reports, Depasquale opined Shiffer was exposed to "hazardous" levels of respiratory asbestos as a bystander.  The trial court excluded this opinion on objections that it lacked foundation.  Though Despasquale reviewed Shiffer's declaration, he did not review his deposition testimony.

Plaintiffs also submitted the declaration of Barry Horn, a medical doctor who had examined Shiffer.  According to Horn, Shiffer's "exposure from the continuing work on the turbines at the Ginna plant while he was present in the facility, including the asbestos-containing insulation on the Westinghouse equipment was a substantial contributing factor to the total aggregate dose of Mr. Shiffer's asbestos exposure."  Horn further opined "[e]ach and every exposure to asbestos experienced by a person with mesothelioma is a substantial contributing factor in the development of the disease."  Horn reviewed Shiffer's summary judgment declaration, but like Depasquale and Ay, did not consider Shiffer's deposition testimony.  The trial court did not rely upon and did not address the admissibility of Horn's declaration.

In its written order granting summary judgment to CBS, the trial court stated Shiffer "failed to submit evidence . . . he was exposed to abestos-containing products or materials."  It subsequently denied plaintiffs' motions for reconsideration and a new trial.

### DISCUSSION

*Initial Grant of Summary Judgment*

"On an appeal from an order granting summary judgment, we independently examine the record to determine whether there are any triable issues of material fact. [Citation.]  In performing our review, we view the evidence in the light most favorable to plaintiffs as the losing parties, resolving any evidentiary doubts or ambiguities in their favor." (*McGonnell v. Kaiser Gypsum Co., Inc.* (2002) 98 Cal.App.4th 1098, 1102 [120 Cal.Rptr.2d 23] (*McGonnell*).)

" 'A threshold issue in asbestos litigation is exposure to the defendant's product. . . .  If there has been no exposure, there is no causation.' (*McGonnell*[, *supra*,

4

98 Cal.App.4th [at p.] 1103 . . . .)  Plaintiffs bear the burden of 'demonstrating that exposure to . . . asbestos products was, in reasonable medical probability, a substantial factor in causing or contributing to [the] risk of developing cancer.'  (*Rutherford v. Owens–Illinois, Inc.* (1997) 16 Cal.4th 953, 957–958 [67 Cal.Rptr.2d 16, 941 P.2d 1203].)  'Factors relevant to assessing whether such a medical probability exists include frequency of exposure, regularity of exposure and proximity of the asbestos product . . . .' [Citation.]  Therefore, '[plaintiffs] cannot prevail . . . without evidence [of exposure] to asbestos-containing materials manufactured or furnished by [a defendant] with enough frequency and regularity as to show a reasonable medical probability that this exposure was a factor in causing the plaintiff's injuries.'  [Citations.]  'While there are many possible causes of any injury, " '[a] possible cause only becomes "probable" when, in the absence of other reasonable causal explanations, it becomes more likely than not that the injury was a result of its action.  This is the outer limit of inference upon which an issue may be submitted to the jury.' " ' "  (*Whitmire v. Ingersoll-Rand Co.* (2010) 184 Cal.App.4th 1078, 1084 [109 Cal.Rptr.3d 371]; see also *Weber v. John Crane, Inc.* (2006) 143 Cal.App.4th 1433, 1438 [50 Cal.Rptr.3d 71].)

In opposing CBS's motion for summary judgment, plaintiffs maintained Shiffer suffered bystander exposure because he was present in the turbine room at Ginna during the installation of Westinghouse-manufactured, asbestos-containing insulation.  The trial court properly concluded plaintiffs' evidence in support of this theory was insufficient.

To begin with, plaintiffs did not establish the nature of Shiffer's observation of the insulation work.  In his abbreviated declaration he stated he "observed construction . . . including insulators insulating piping in the turbine building."  Although he also declared he was frequently *in the turbine room* for training, he did not say whether or on how many occasions he observed the insulation process, itself, or whether he merely saw the results of the process after being offsite for some time.  Mere presence at a site where asbestos was present is insufficient to establish legally significant asbestos exposure. (*Andrews v. Foster Wheeler LLC* (2006) 138 Cal.App.4th 96, 112 [41 Cal.Rptr.3d 229].)

5

Additionally, Shiffer failed to raise a triable issue that whatever piping insulation work he did observe involved Westinghouse-supplied material. Considering both Shiffer's detailed deposition testimony and his cursory declaration, it is apparent that whatever insulating work he may have witnessed involved only some of the Ginna piping, and that was only the smaller, auxiliary piping.

The installation progress reports and Ware's deposition testimony, in turn, established that the asbestos-containing piping insulation Westinghouse supplied related specifically to the turbine, and the cross-over and cross-under piping. Even if insulation of these elements continued to some extent while Shiffer was at Ginna, there is no evidence Shiffer was present in the turbine room when *this* insulation work was being done. For example, Shiffer did not state, or provide any other evidence, that the "auxiliary" piping insulation he described in his deposition was Westinghouse's cross-under or cross-over piping.

Nor is it appropriate here to infer that Shiffer was present during the insulation of the asbestos-containing Westinghouse components. Given the record, this inference would be "only as likely . . . or even less likely" then the contrary inference. Under such circumstances, with competing ambiguous inferences at best in "equipoise," we must "grant the defendants' motion for summary judgment . . . because a reasonable trier of fact could not find for the plaintiff[s]." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 857 & fn. 27 [107 Cal.Rptr.2d 841, 24 P.3d 493], italics omitted (*Aguilar*).) The question "may not be submitted to a trier of fact for determination in favor of either the plaintiff[s] or the defendant[], but must be taken from the trier of fact and resolved by the court itself in the defendants' favor and against the plaintiff." (*Ibid.*)

Rejecting such an inference is all the more appropriate given the timing and content of Ware's deposition and Shiffer's summary judgment declaration, and in light of Shiffer's knowledge about the turbine set at issue. Plaintiffs deposed Ware six months after Shiffer's deposition with full knowledge of what insulation Shiffer had seen. Yet, plaintiffs never asked Ware, as far as the record before us discloses, any questions linking the insulation work Shiffer described in his deposition to the insulation described in the

6

Westinghouse progress reports or the insulation of the cross-over or cross-under piping. And while Shiffer then had a chance to explain any link in his opposing declaration, he not only failed to do so, but provided only generic assertions of seeing insulation, essentially backtracking from his more detailed deposition testimony. Moreover, Shiffer had been sent to Ginna to train employees on the operation of the Westinghouse turbine equipment. Thus, he had a quantum of knowledge about the system that underscores the significance of his failure to provide a declaration raising a triable issue that any insulating work he observed was of the Westinghouse-supplied turbine and cross-over and cross-under piping. Indeed, this suggests an inference in favor of liability is not merely "as likely" as one against it, but actually is "less likely," and, in fact, not reasonable under the circumstances. (See *Aguilar*, 25 Cal.4th at p. 857, italics omitted; *Isner v. Falkenberg/Gilliam & Associates, Inc.* (2008) 160 Cal.App.4th 1393, 1398 [73 Cal.Rptr.3d 433] ["An inference is reasonable if, and only if, it implies the existence of an element more likely than the nonexistence of that element."].)

In short, to make the inference of exposure Shiffer requests would be to engage in speculation, which we may not do. (*McGonnell*, *supra*, 98 Cal.App.4th at p. 1105; *Izell v. Union Carbide Corp.* (2014) 231 Cal.App.4th 962, 971 [180 Cal.Rptr.3d 382] [even if Union Carbide's asbestos compound made it to a jobsite, "this still leaves speculation about whether Mr. Izell was present when his workers sanded joint compound that might have contained Union Carbide asbestos, as opposed to asbestos from one of Kelly-Moore's other suppliers"].)

Despite the manifest import of Shiffer's deposition testimony, Shiffer also did not provide his experts with it, but provided them with only his cursory declaration and the installation progress reports. Thus, the experts, whose opinions on causation were essential to Shiffer's case (*Rutherford v. Owens-Illinois, Inc.*, *supra*, 16 Cal.4th at p. 977, fn. 11; *Weber*, *supra*, 143 Cal.App.4th at p. 1438; *Wilson v. Southern California Edison Co.* (2015) 234 Cal.App.4th 123, 152 [184 Cal.Rptr.3d 26]), considered a significantly incomplete universe of information, leaving them without an adequate basis to conclude, as Depasquale and Horn did, that Shiffer's exposure to Westinghouse-related asbestos

7

was hazardous and a substantial cause of his mesothelioma. An expert's opinion is only as good as the facts on which it is built. (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 770 [149 Cal.Rptr.3d 614, 288 P.3d 1237] [expert opinion " 'may not be based "on assumptions of fact without evidentiary support" ' "]; *Casey v. Perini Corp.* (2012) 206 Cal.App.4th 1222, 1235 [124 Cal.Rptr.3d 678] [asbestos expert's opinion based on assumed facts not admissible]; cf. *Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 633 [85 Cal.Rptr.2d 386] ["the opinion of any expert witness 'is only as good as the facts and reasons on which it is based' " and a fact finder ought not credit expert testimony mischaracterizing level of asbestos exposure].)

This is not simply a case in which the expert's *reasoning* was not sufficiently fleshed out. (See *Garrett v. Howmedica Osteonics Corp.* (2013) 214 Cal.App.4th 173, 189 [153 Cal.Rptr.3d 693]; *Powell v. Kleinman* (2007) 151 Cal.App.4th 112, 130 [59 Cal.Rptr.3d 618] [expert declarations in opposition to summary judgment are liberally construed, but still must be based on facts in the record].) Rather, the problem here is foundational. The experts did not analyze the complete set of facts. Accordingly, the experts' opinions did not provide evidence Shiffer suffered exposure, let alone a hazardous level of exposure, to *Westinghouse-related* asbestos at Ginna, and the trial court did not err in excluding such conclusions from the summary judgment record. (*Sargon*, *supra*, 55 Cal.4th at p. 773.)

Due to these fundamental evidentiary shortcomings, Shiffer did not meet his burden of producing competent and admissible evidence raising a triable issue of material fact on exposure and causation. Accordingly, summary judgment was properly granted to CBS. (See *Aguilar*, *supra*, 25 Cal.4th at p. 850.)

### Denial of Rehearing

The trial court also did not err in denying plaintiffs' motions for reconsideration and for a new trial under Code of Civil Procedure sections 1008 and 657. The evidence related to Shiffer's re-entrainment exposure, as opposed to bystander exposure, was not new.

This is the relevant timeline:  Two documents were produced to Shiffer as part of discovery on February 28, 2013:  an April 1979 study evaluating asbestos exposure at a Tucson power facility and a February 1979 letter concerning air quality at another facility.  Two weeks later, on March 14, 2013, Shiffer's expert Depasquale signed his declaration in opposition to summary judgment proffering a bystander theory of exposure and making no reference to the 1979 documents.  About a week after that, on March 22, a CBS expert, Robert Sawyer, gave one hour of deposition testimony and was briefly questioned about the two 1979 documents.  The summary judgment hearing was four days later, on March 26, and the order granting summary judgment issued March 28.

Following the summary judgment ruling, plaintiffs' attorney, on April 1, provided Sawyer's 37-page deposition transcript to Despasquale.  On April 5, two weeks after Sawyer's one-hour deposition was taken and more than a month after the 1979 documents were produced, Depasquale proffered an amplified declaration based on the study, the letter, and Sawyer's related testimony, in which he opines Shiffer suffered asbestos exposure not only as a bystander, but because of re-entrainment.

"Code of Civil Procedure section 1008, subdivision (a) provides that a party affected by a prior court order may, 'based upon new or different facts, circumstances, or law, make application to the same judge or court that made the order, to reconsider the matter and modify, amend, or revoke the prior order.'  (Code Civ. Proc., § 1008, subd. (a).)  Similarly, Code of Civil Procedure section 657, subdivision 4 provides that a party may move for a new trial on a showing that there is '[n]ewly discovered evidence, material for the party making the application, which he could not, with reasonable diligence, have discovered and produced at the trial.' "  (*In re H.S.* (2010) 188 Cal.App.4th 103, 108 [114 Cal.Rptr.3d 898].)

Under both sections, the moving party must provide a " ' "satisfactory explanation for the failure to produce that evidence at an earlier time." ' "  (*In re H.S.*, *supra*, 188 Cal.App.4th at p. 108; *Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 833 [189 Cal.Rptr.3d 824, 352 P.3d 391]; *New*

9

*York Times Co. v. Superior Court* (2005) 135 Cal.App.4th 206, 212 [37 Cal.Rptr.3d 338] (*New York Times*).)

We review the denial of reconsideration and new trial motions based on new evidence for abuse of discretion. (*New York Times*, *supra*, 135 Cal.App.4th at p. 212 [§ 1008]; *Santillan v. Roman Catholic Bishop of Fresno* (2012) 202 Cal.App.4th 708, 728 [136 Cal.Rptr.3d 197] [§ 657].)

Here, there was no new evidence and, further, no justification for the delay. The study and letter were produced two weeks before Depasquale's summary judgment declaration and a month before the summary judgment hearing. Sawyer's cursory deposition testimony also preceded the summary judgment hearing and was readily available to Shiffer, whose attorney conducted the deposition. (See *New York Times*, *supra*, 135 Cal.App.4th at pp. 212–214 [depositions conducted on eve of summary judgment hearing do not generate new facts].) Accordingly, Depasquale's April 5 declaration purporting to reach new opinions based on this evidence was not, itself, new evidence. Depasquale had the materials he needed to reach his April 5 conclusion before the summary judgment hearing. Those opinions should have been timely presented but were not. (*In re H.S.*, *supra*, 188 Cal.App.4th at pp. 105–106, 109 [in juvenile case, "belated submission of an expert's opinion, formed based on evidence that was available at" time of original hearing does not constitute "new evidence"]; *People v. Soojian* (2010) 190 Cal.App.4th 491, 513 [118 Cal.Rptr.3d 435] ["We agree with the trial court that the expert testimony proffered by Soojian could have been, and perhaps should have been, presented at trial."].)

## DISPOSITION

The judgment is affirmed. Respondent to recover costs on appeal.

10

_____

Banke, J.

We concur:

_____

Humes, P. J.

_____

Dondero, J.

A139388, *Shiffer v. CBS Corp.*

11

Trial Judge:                    The Honorable Teri L. Jackson

Trial Court:                    San Francisco City and County Superior Court


Brayton Purcell, Richard M. Grant, Alan R. Brayton and Llyod F. LeRoy for plaintiffs and appellants.

Pond North, Frank D. Pond, Ann I. Park, Kevin D. Jamison and Gavin D. Whitis; Evert, Weathersby & Houff and Christopher G. Conley *pro hac vice* for defendant and respondent.

12