Filed 10/28/19; Certified for publication 11/26/19 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| RICHARD BERG et al.,<br><br>        Plaintiffs and Appellants,<br><br>v.<br><br>COLGATE-PALMOLIVE COMPANY,<br><br>        Defendant and Respondent. | A154245<br><br>(Alameda County<br>Super. Ct. No. RG17849298) |

After he developed mesothelioma, plaintiff Richard Berg and his wife sued Colgate-Palmolive Company, whose predecessor, the Mennen Company, manufactured a shave talc he used decades earlier. The trial court granted summary judgment to Colgate, concluding that plaintiffs failed to create a triable issue of material fact of whether the Mennen product Berg used contained asbestos. We agree and affirm.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

In 2017, plaintiffs sued Colgate and more than a dozen other entities for Berg's exposure to asbestos. As to Colgate, it is undisputed that Berg was exposed to Mennen Shave Talc between 1959 and 1961 or 1962, when he was a teenager. He used a total of four to six containers of the shave talc during that period.

Colgate moved for summary judgment on the basis that plaintiffs could not establish that the shave talc Berg used contained asbestos. In support of the motion,

1

Colgate submitted the declaration of geologist Matthew Sanchez, Ph.D. He explained that "[a]sbestos is a collective term that describes a regulated group of six naturally occurring, highly fibrous silicate minerals" which, "when crystallized in a rare asbestiform habit"—"likely account[ing] for less than 1% of the known world occurrences of each mineral"—"are regulated as asbestos." Relying on studies by other researchers and his own testing, he opined that Mennen Shave Talc was "free of asbestos" and, even if some of the raw talc sourced to make the product was contaminated with asbestos, there was no legitimate scientific basis on which to conclude that any particular container of shave talc was contaminated.

In opposition to the motion, plaintiffs submitted geologist Sean Fitzgerald's declaration, which they characterize as "the basis for [their] case." After an extensive discussion of his credentials and "the mineralogy of talc and asbestos," Fitzgerald addressed the presence of asbestos in Mennen products. He stated that "the primary supplier of talc to Mennen was Whittaker Clark & Daniels," a company that "sourced talc from both Italy and North Carolina." As he explained at length, talc mines in these locations "have been historically contemporaneously found to have been contaminated with asbestos" and continue to contain asbestos. Specifically, testing by the Food and Drug Administration (FDA) in 1972 showed that "Mennen Shave Talc contained 4 percent chrysotile asbestos." And testing in 1976 demonstrated that "Mennen Shave Talc manufactured in 1972 contained 2 percent tremolite asbestos."

Fitzgerald also tested samples of Mennen Shave Talc himself in 2016 and 2018. In 2016, a law firm provided him with "a Mennen after shave talc sample . . . packaged in a metal green and white container of powder labeled as containing four ounces," consistent with Berg's description of the containers he remembered using. Fitzgerald stated that he "was asked to determine whether asbestos was released from the product upon normal use." Tests under "five different potential exposure scenarios" all showed "countable structures of amphibole" minerals, the majority of which "were clearly asbestiform in crystalline habit."

2

In 2018, Fitzgerald received from Berg's current law firm "four containers of Mennen Shave Talc" that were also consistent in appearance with the containers Berg remembered. Each sample came in a four-ounce tin, all of which "appeared to be full and in unused condition" and "had language describing the contents as being 'made from the finest imported Italian talc.' " Fitzgerald reported that each sample contained "abundant fibers and fibrous structures countable . . . as asbestos structures."

Based on his testing and the other evidence he discussed, Fitzgerald opined that, "to a reasonable degree of scientific certainty, . . . repeated use of Mennen Shave Talc products such as those tested and reported here in a manner consistent with the intended use would cause respirable asbestos fibers to become airborne and inhalable," creating "airborne asbestos concentrations . . . hundreds if not thousands of times greater than background or ambient levels." He also opined "to a reasonable degree of scientific certainty" that, based on the evidence that talc from Italy and/or North Carolina was used in the Mennen Shave Talc Berg used in the relevant time period, that product "did contain asbestos from the years 1959 to 1962, and . . . Mr. Berg's use of the product during this time would have resulted in repeated exposure to airborne asbestos, hundreds if not thousands of times greater than background or ambient levels."

After a hearing, the trial court granted the motion for summary judgment and entered judgment in Colgate's favor. In its written ruling, the court concluded that summary judgment was compelled because, "[e]ven accepting [p]laintiffs' version of all colorably disputed facts, drawing all plausible inferences in their favor, and assuming the admissibility of all their challenged evidence—including the declaration of their expert Sean Fitzgerald—their responses to discovery are devoid of specific facts suggesting that they can submit admissible evidence raising a triable dispute as to one dispositive issue, and the evidence submitted with their opposition fails to raise such a dispute. The dispositive issue is whether, assuming that the talc that Mennen used to make its Shave Talc in 1959–61 came from mines in North Carolina and Italy that contain accessory minerals . . . , and assuming further that some amounts of those minerals developed in an asbestiform habit and contaminated talc supplied from those mines to Mennen in the

3

relevant period, any of the particular 4–6 cans of Mennen Shave Talc that [Berg's] testimony indicated that he used contained such asbestos."

The trial court explained that the balance of Fitzgerald's declaration did not support his "vaguely worded" ultimate opinion that Mennen Shave Talc contained asbestos in the relevant time period and use of the product would have repeatedly exposed Berg to the substance. This was because "Fitzgerald identifie[d] no evidence and sets forth no demonstrably scientifically accepted (or even commonsensically logical) rationale by which he could determine what percentage of the cans of Mennen shave talc sold in the relevant period contained talc from lots contaminated with chrysotile and/or amphibole minerals in general, let alone contaminated with asbestiform versions of those minerals." Without such information, Fitzgerald could not logically conclude either that all cans of Mennen Shave Talc sold in the relevant time period contained asbestos or that "such a large percentage of [such] cans . . . contained asbestos that it was more likely than not that at least one of the 4–6 cans that [Berg] used was among those contaminated." As a result, plaintiffs did not have and could not reasonably obtain "admissible evidence creating a triable factual dispute that a jury could, without speculation, resolve by finding that [Berg] was more likely than not exposed to asbestos contained in a product sold by Mennen."

## II.
### DISCUSSION

A.    *The Applicable Legal Standards.*

A trial court properly grants a motion for summary judgment if "there is no triable issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment must present evidence that either "conclusively negate[s] an element of the plaintiff's cause of action" or "show[s] that the plaintiff does not possess, and cannot reasonably obtain," evidence necessary to establish an element of the claim. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853–854.) When, as here, the defendant meets this burden, "the burden shifts to the plaintiff . . . to show that a triable issue of one

4

or more material facts exists as to the cause of action or a defense thereto."  (Code Civ. Proc., § 437c, subd. (p)(2).)  "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof," which here is the preponderance of the evidence.  (*Aguilar*, at p. 850, fn. omitted.)

We review the record de novo and "decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law." (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348.)  In doing so, " 'we must " 'view the evidence in the light most favorable to [the plaintiffs] . . .' and 'liberally construe [the plaintiffs'] evidentiary submissions and strictly scrutinize [the] defendant['s] own evidence, in order to resolve any evidentiary doubts or ambiguities in [the plaintiffs'] favor.' " ' "  (*Turley v. Familian Corp.* (2017) 18 Cal.App.5th 969, 978.)

To prevail on "a cause of action for asbestos-related latent injuries, the plaintiff must first establish some threshold *exposure* to the defendant's defective asbestos-containing products."  (*Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 982.) Here, the determinative issue is whether plaintiffs presented sufficient evidence to create a triable issue of whether the Mennen products to which Berg was exposed actually contained asbestos.  (See *Lyons v. Colgate-Palmolive Co.* (2017) 16 Cal.App.5th 463, 471 (*Lyons*).)  Such a triable issue exists only if a reasonable jury could conclude from the evidence that it was more likely than not that the shave talc Berg used contained asbestos.  (See *Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 850.)  "The mere 'possibility' of exposure does not create a triable issue of fact."  (*Andrews v. Foster Wheeler LLC* (2006) 138 Cal.App.4th 96, 108.)

> B.     *Summary Judgment Was Proper Because a Jury Could Not Conclude that the Shave Talc Berg Used More Likely than Not Contained Asbestos.*

Plaintiffs claim there was a triable issue of material fact of whether Berg "was, more likely than not, exposed to asbestos-containing materials attributable to [Colgate]" because they presented evidence from which a jury could conclude "that all or virtually all of the Mennen Shave Talc products during the relevant period" contained asbestos.

5

We are not persuaded. At best, plaintiffs presented evidence that it was possible the shave talc Berg used exposed him to asbestos, but they failed to present evidence upon which a reasonable jury could conclude that any such exposure was more likely than not.

In making their argument, plaintiffs rely almost exclusively on the Fitzgerald declaration and *Lyons*, in which Division Three of this court reversed a grant of summary judgment against a plaintiff who also submitted a declaration from Fitzgerald. (*Lyons*, *supra*, 16 Cal.App.5th at pp. 468, 471–472.) The *Lyons* plaintiff used a Colgate cosmetic talcum product called Cashmere Bouquet each time she took a bath over a 20-year period starting in the early 1950's, and she ultimately developed mesothelioma. (*Id.* at p. 465.) Characterizing Fitzgerald's opinion as being that "*all* of [the Cashmere Boutique] product contained 'significant concentrations of airborne asbestos' " during the relevant time period, our colleagues concluded that his declaration, "coupled with [the] plaintiff's use of the product over those 20 years, particularly in the absence of evidence of any other source of the asbestos causing [her] mesothelioma, create[d] more than an unsupported possibility" that her use of Cashmere Bouquet exposed her to asbestos. (*Id.* at pp. 468–469, 471, italics added.)

Plaintiffs claim that *Lyons* is " 'on all fours' and dispositive here," but we disagree. To begin with, unlike the *Lyons* plaintiff, Berg alleged that he was exposed to other products that contained asbestos as part of their design, such as cigarettes with asbestos-containing filters. Moreover, Berg used far less Mennen Shave Talc over a much shorter period of time than the *Lyons* plaintiff used Cashmere Bouquet. Thus, Berg's eventual development of mesothelioma provides much weaker support for an inference that the shave talc he used contained asbestos.

More importantly, in *Lyons,* Fitzgerald's conclusion that *all* of the Cashmere Bouquet talcum sold during the relevant time period contained asbestos was accepted because Colgate had waived its objections to it and because "any deficiency in that respect [was] not apparent." (*Lyons*, *supra*, 16 Cal.App.5th at p. 468.) Here, Fitzgerald's conclusion that Mennen Shave Talc contained asbestos from 1959 to 1962 was vigorously disputed, and the deficiencies in the factual foundation supporting the

conclusion are readily apparent. As the trial court explained, even assuming that some talc from the North Carolina and Italy mines contained some level of asbestos, the Fitzgerald declaration fails to support a conclusion that all or most of the Mennen Shave Talc containers sold from 1959 to 1962 contained asbestos. The testing of the talc on which Fitzgerald relies, both his own and others', occurred decades after the period of Berg's use. The only basis on which to conclude that the samples tested were of the correct vintage was Berg's testimony that the containers Fitzgerald tested looked like the ones he used, as no evidence was presented on the time span that these containers were actually marketed. This testimony falls far short of establishing that any containers of Mennen Shave Talc sold between 1959 and 1961 or 1962 contained asbestos, much less that it is more likely than not that the containers Berg used contained asbestos.[1]

It was not enough for plaintiffs to produce some evidence that Berg was exposed to a product that possibly contained asbestos. "The evidence must be of sufficient quality to allow the trier of fact to find the underlying fact in favor of the party opposing the motion for summary judgment," and "speculation" that the product Berg used might have contained asbestos is insufficient. (*McGonnell v. Kaiser Gypsum Co.* (2002) 98 Cal.App.4th 1098, 1105.) When an inference that the plaintiff was exposed to asbestos "would be 'only as likely . . . or even less likely' than the contrary inference," a trial court must grant the defendant's motion for summary judgment " 'because a reasonable trier of fact could not find for the plaintiff[].' " (*Shiffer v. CBS Corp.* (2015) 240 Cal.App.4th 246, 252.)

In short, the trial court correctly determined that plaintiffs failed to carry their burden, because at best the evidence they presented demonstrated only a possibility that Berg was exposed to asbestos through Mennen products. (See *Andrews v. Foster Wheeler LLC*, *supra*, 138 Cal.App.4th at p. 108.) Summary judgment was proper.

---

[1] Indeed, in brushing aside Colgate's reliance on FDA testing of Mennen Shave Talc in the 1970's that did not reveal the presence of asbestos, Berg states that this testing "is entirely irrelevant since [he] used Mennen Shave Talc from 1959 to 1962. *Later tests are simply not relevant to this case*." (Italics added.)

## III.
### DISPOSITION

The judgment is affirmed.  Respondent is awarded its costs on appeal.

 

_____

Humes, P.J.

WE CONCUR:

_____

Margulies, J.

_____

Sanchez, J.

Filed 11/22/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| RICHARD BERG et al.,<br><br>     Plaintiffs and Appellants,<br><br>v.<br><br>COLGATE-PALMOLIVE COMPANY,<br><br>     Defendant and Respondent. | A154245<br><br>(Alameda County<br>Super. Ct. No. RG17849298) |

THE COURT:

The opinion in the above-entitled matter filed on October 28, 2019, was not certified for publication in the Official Reports. After the court's review of a request under California Rules of Court, rule 8.1120, and good cause established under rule 8.1105, it is hereby ordered that the opinion should be published in the Official Reports.

Dated:

_____
Humes, P.J.

1

Trial Court:   Alameda County Superior Court

Trial Judge:   Hon. Winifred Y. Smith

Counsel:
Brayton Purcell LLP, Alan R. Brayton, Gilbert L. Purcell and Richard M. Grant for Plaintiff and Appellant.

Manning Gross & Massenburg LLP, Tina Van Dam, Karen P. Agelson, Carrie S. Lin; Quinn Emanuel Urquhart & Sullivan, Adam M. Abensohn and Morgan W. Tovey for Defendant and Respondent.

*Berg v. Colgate-Palmolive*  A154245

2