Filed 6/4/25  Easterling v. Henkels & McCoy CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| GAYLE EASTERLING, Plaintiff and Appellant, v. HENKELS & McCOY, INC., Defendant and Respondent. | 2d Civ. No. B341336 (Super. Ct. No. 56-2023-00574619-CU-PO-VTA) (Ventura County) |

Raymond Easterling (Easterling) and his wife Gayle Easterling (the Easterlings) sued Henkels & McCoy, Inc. (Henkels) for Easterling's injuries from asbestos exposure. The Easterlings appealed from the trial court's grant of summary judgment against them.[1] Appellant contends Henkels made an insufficient showing to shift the burden of proof on summary judgment, and the trial court erred in denying a motion to

---

[1] Gayle Easterling was substituted in as successor in interest for Raymond Easterling, who is now deceased. (Code Civ. Proc., § 377.32.)

continue the summary judgment hearing.  We affirm.

FACTUAL AND PROCEDURAL HISTORY

*Complaint*

Easterling was employed as an installer for Western Electric.  Henkels is a contractor.  In January 2023, the Easterlings filed a complaint for personal injuries against Henkels and 35 other businesses.  They alleged Easterling suffered from lung cancer and other injuries caused by defendants exposing him to products containing asbestos.  The complaint alleged the products "specifically include, but are not limited to: adhesives/tape/mastic; automobiles; Bakelite; boilers; automotive brakes/clutches/gaskets; circuits/circuit boards; cloth; communication devices; construction materials; controllers; electrical components; electronics; fans; fiber product; friction materials; gauges; generators; motors; panels; paper; phenolic resins/materials; regulators; sealants/coatings; switches; tape; wire/cable; and other materials containing asbestos currently unknown or unspecified by plaintiffs."

The complaint alleged that Henkels, as a "[c]ontractor [l]iability [d]efendant," owned, managed, or controlled the premises containing these products.  It also alleged that Henkels caused the use of "asbestos-containing insulation, other building materials, products and toxic substances."  The complaint did not specifically describe these materials.

*Interrogatories*

In May 2023, pursuant to a case management order, standard asbestos interrogatories were propounded to the Easterlings on behalf of all defendants.  The interrogatories instructed that "the plaintiff is required to furnish all information that is available to the plaintiff and anyone acting or

2

purporting to act on his/her behalf." The interrogatories included the following definitions:

" 'DESCRIBE' as it relates to equipment, product or material" was defined as including "a complete description . . . including but not limited to the name, manufacturer, supplier, distributor, color, texture, consistency, shape, size and any markings; a description of the container and/or packaging . . . and a description of how the equipment, product or material was used."

" 'IDENTIFY' in regards to WORKSITES" included "the name, street address (including city, state and zip code), property owner . . . parcel number, or other identifying characteristics."

" 'IDENTIFY' in regards to ASBESTOS-CONTAINING PRODUCTS means to state the trade name, brand name and/or manufacturer of the product(s), and any other markings, writings or logos associated with the product."

Easterling responded to the interrogatories in July 2023. Interrogatory number 18 asked Easterling to describe each product, material, or equipment containing asbestos he "worked with or around" or was exposed to and the date, place, and circumstances of each exposure. Easterling responded using conclusory language similar to the complaint, stating he "*alleges* Plaintiff worked with and was exposed to asbestos for which Defendants are liable." (Italics added.)

Regarding the defendants collectively, Easterling stated he worked as a telecommunications installer from 1962 through 1984 (or 1962 through 1980) at "various commercial, manufacturing and industrial locations in and around Ventura, Los Angeles, Riverside and San Bernardino, CA counties, including but not limited to: Western Electric, Anheuser-Busch[,]

3

Douglas Aircraft, and Hughes Aircraft." He did not provide more specific information as to the dates or locations. He stated that he "and/or others in his vicinity, installed, removed, renovated, repaired, scraped, cut, sanded, brushed, wire brushed, applied, removed, and performed labor/clean up, swept, moved and otherwise manipulated or disturbed" general categories of "asbestos-containing products including adhesives/tape/mastic/glues; wiring; cable, electrical components gauges; home appliances; insulation/insulating materials; and other asbestos containing products."

Regarding Henkels specifically, Easterling responded that it was a "contractor who supplied and worked with asbestos-containing products including construction materials, cable, wire, insulating materials, controllers, generators, [and] gauges." He provided no further information regarding the products or the date, place or circumstances of his exposure. He listed the persons with knowledge of facts supporting his responses as the Easterlings, unidentified supervisors and coworkers, and defendants' persons most qualified. In response to the request to identify all documents supporting his responses, Easterling stated that documents "may be available" from his employers, and "[f]urther documents" are in possession of defendants but had not been produced in discovery. Easterling also said his "investigation and discovery are continuing."

Interrogatories number 20 and 21 asked who controlled each worksite, each contractor who exposed Easterling to asbestos, and the "nature or manner" of his asbestos exposure at each worksite. Easterling responded that "during some of the time of Plaintiff's employment, the jobsites were controlled and/or operated by contractors [including Henkels] who exposed Plaintiff

4

to asbestos." He provided a general list of Henkels's work that "caused the release" of asbestos fibers into the air, including "normal installation and application activities, sweeping, brushing, moving, and other activities using asbestos containing products." He listed 26 general categories of products (e.g., "stucco, stucco cements, joint compounds and drywall; controllers; electrical components; electronics"). No specific dates, incidents, or products were identified. Easterling again said his "investigation and discovery are continuing."

*Deposition*

In April 2024, Easterling was deposed by Henkels and other defendants. He stated he worked "with or around" Henkels contractors on 15 or 20 projects between 1960 and 2002. He said Henkels built buildings, including installing concrete and "probably" digging holes for gas tanks. While Easterling was working inside buildings, Henkels would also be inside painting, installing drywall, and "laying out the floor." Easterling complained that Henkels "left trash everywhere." But he did not know if the trash exposed him to asbestos.

Easterling was asked what Henkels did to expose him to asbestos. He responded: "Well, I wasn't aware of anything at the time until like maybe '82 or '83 when they finally decided to say that 'Hey, this stuff hurt you,' and we were trained on asbestos abatement. At that time, I didn't even know that sheetrock or drywall, I didn't know it even contained asbestos. [¶] Like the Armstrong tiles that they put on the floor, I wasn't aware of that. The—A lot of the joint compounds that they used and Quik- —I think it's something called Quikrete for mudding—or Quikdry or something, once they got the sheetrock and everything up, they had guys come in and they would fill the seams, they even had

5

guys on stilts running around plastering everything, and then they come in and sand it and then the painters would come in."

Easterling was asked if Henkels knew the products they were using contained asbestos. He responded, "I don't think they even knew or they probably wouldn't have been using it. But nobody was really made aware of this until, gosh, '82 or '3, just before the Olympics." He was also asked, "Do you know of anyone that could provide additional information about what work you performed with or around Henkels and McCoy contractors?" Easterling responded, "No, most of my peers are gone."

*Easterlings' discovery requests*

In November 2023, the Easterlings served Henkels with a request for production of documents regarding asbestos-containing materials it supplied. (Code Civ. Proc.,[2] § 2031.010 et seq.) Henkels provided a verified response in December 2023 that stated: "Henkels never manufactured, made, sold, distributed, supplied or utilized any asbestos containing products at any time during the exposure years claimed by Plaintiffs or at any of the job sites identified . . . . Henkels never owned, operated, leased, occupied or controlled any of the job sites identified . . . . Accordingly, Henkels has no invoices, records or documents related to any asbestos containing products during that time frame." The Easterlings did not move to compel further responses.

In May 2024, Easterling served Henkels with a deposition notice for its person(s) most qualified (PMQ) and custodian of records and a request for production of documents. (§§ 2025.220,

[2] All statutory references are to the Code of Civil Procedure.

6

subd. (a)(3) & (4), 2025.230.)  Later that month, Easterling filed a motion to compel the deposition and document production.  The motion stated the depositions would seek information regarding Henkels's work with and around asbestos-containing products at Easterling's worksites, its control of those worksites, safety rules, the amount of asbestos fibers released, and the identity of percipient witnesses.  Henkels opposed the motion, stating the deposition was unnecessary because Easterling had noticed the deposition of Henkels's representative, Tom Taylor, who had verified the earlier discovery responses, and because the Easterlings had not moved to compel further responses to the document production demand.  (§ 2031.310, subd. (c).)

On July 19, the court ordered Henkels to produce the PMQ and custodian of records for deposition no later than August 13.  The court denied the requests for document production because Henkels's discovery responses stated it had no responsive documents.  Counsel met and conferred but Henkels did not provide a date for the deposition and it was not held.

*Summary judgment*

In May 2024, the court granted Easterling's motion for trial preference based on his age and health conditions (§ 36, subd. (a)), and confirmed the trial date of September 16.

Henkels's motion for summary judgment was set for August 20.  The motion for summary judgment relied on Easterling's interrogatory responses and deposition testimony.  The Easterlings' opposition presented no additional facts regarding Henkels's liability.  No medical evidence was presented.

The Easterlings requested the motion for summary judgment be continued or denied based on their inability to

7

depose Henkels's PMQ and records custodian. They contended that facts essential to opposing summary judgment might exist. (§ 437c, subd. (h).) The trial court denied the continuance. The court granted summary judgment for Henkels, finding that the Easterlings failed to show any evidence of a triable issue of material fact that Henkels exposed Easterling to asbestos.

## DISCUSSION

### Asbestos exposure

To establish "a cause of action for asbestos-related latent injuries, the plaintiff must first establish some threshold *exposure* to the defendant's defective asbestos-containing products, *and* . . . that exposure to defendant's product was a substantial factor causing the illness by showing that in reasonable medical probability it contribut[ed] to the plaintiff's or decedent's *risk* of developing cancer." (*Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 982–983, fn. omitted.) "Mere presence at a site where asbestos was present is insufficient to establish legally sufficient asbestos exposure." (*Shiffer v. CBS Corp.* (2015) 240 Cal.App.4th 246, 252.) Factors relevant to the substantial factor analysis may include "the length, frequency, proximity and intensity of exposure, the peculiar properties of the individual product, any other potential causes to which the disease could be attributed (e.g., other asbestos products, cigarette smoking), and perhaps other factors affecting the assessment of comparative risk." (*Rutherford*, at p. 975.)

### Summary judgment

"[A] motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (§ 437c, subd. (c).) A defendant meets their

burden by showing "that one or more of the elements of the cause of action . . . cannot be established." (*Id.*, subd. (p)(2).) The burden then shifts to the plaintiff "to show that a triable issue of one or more material facts exists as to the cause of action . . . . The plaintiff . . . shall not rely upon the allegations or denials of its pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to the cause of action." (*Ibid.*)

A defendant moving for summary judgment is not required "to conclusively negate an element of the plaintiff's cause of action. . . . All that the defendant need do is to 'show[] that one or more elements of the cause of action . . . cannot be established' by the plaintiff." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853, fn. omitted (*Aguilar*).) "There is a genuine issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Id.* at p. 845.)

A summary judgment motion may be supported by "answers to interrogatories" and other modes of discovery such as "depositions." (§ 437c, subd. (b)(1); cf. *Collin v. CalPortland Co.* (2014) 228 Cal.App.4th 582, 587 [summary judgment can also be supported "through factually devoid discovery responses"].)

If the defendant fails to shift the burden, the motion must be denied. (*Dix v. Live Nation Entertainment, Inc.* (2020) 56 Cal.App.5th 590, 604.) "Accordingly, a plaintiff has no evidentiary burden on summary judgment unless and until the moving defendant first meets its initial burden." (*Id.* at pp. 604–605.)

We review a grant of summary judgment de novo. (*Coral Construction, Inc. v. City and County of San Francisco* (2010) 50 Cal.4th 315, 336.) We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in their favor. (*Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 274.)

*Burden of proof*

Appellant contends Henkels made an insufficient showing to shift the burden of proof on summary judgment regarding exposure to Henkels's alleged asbestos-containing products. We disagree.

Speculation that the plaintiff may have been exposed to asbestos provided by the defendant is insufficient. (*Johnson v. ArvinMeritor, Inc.* (2017) 9 Cal.App.5th 234, 245.) Instead, " '[t]he evidence must be of sufficient quality to allow the trier of fact to find the underlying fact in favor of the party opposing the motion for summary judgment.' " (*Ibid.*)

" '[E]mpty' discovery responses can be enough by itself to support summary judgment." *(Scheiding v. Dinwiddie Construction Co.* (1999) 69 Cal.App.4th 64, 78 (*Scheiding*).) In an asbestos case, it can be " 'enough to show through factually vague discovery responses that [the plaintiff] lacked any significant probative evidence on the critical element of causation. In other words, [the defendant] could effectively show that the element of causation "cannot be established" by pointing to an *absence of evidence* to support this element.' " (*Ibid.*)

The Easterlings provided factually vague responses here. They stated that on unknown dates during a 40-year period at unknown locations within a four-county area, Easterling was exposed to one or more items in a list of general categories of

10

materials.  In response to interrogatory 18 asking for a description of each asbestos-containing material to which he was exposed and the date, place and circumstance of each exposure, he stated only that Henkels was a "contractor who supplied and worked with asbestos-containing products including construction materials, cable, wire, insulating materials, controllers, generators, [and] gauges."  Easterling provided no further information about the specific products allegedly containing asbestos or the date, place or circumstances of his alleged asbestos exposure.  Instead, Easterling stated he "*allege[d]* Plaintiff worked with and was exposed to asbestos for which Defendants are liable."  (Italics added.)  He did not identify any percipient witnesses by name.  At his deposition, Easterling mentioned general categories of materials—joint compounds, drywall, and Armstrong floor tiles—but it was unclear whether they in fact contained asbestos, or if Henkels provided or used the materials.

Easterling's testimony was unlike that in *Collin v. CalPortland Co.*, *supra*, 228 Cal.App.4th 582, upon which appellant relies.  There, the plaintiff testified he was exposed to the dust created when workers cut Transite pipes, a trade name for defendant's product that contained asbestos.  (*Id*. at p. 598.)  But Easterling established at most "presence at a site where asbestos was present," which is "insufficient to establish legally significant asbestos exposure."  (*Shiffer v. CBS Corp.*, *supra*, 240 Cal.App.4th at p. 252.)  This absence of factual support shifted the burden to the Easterlings to show they would be able to prove their case at trial.

The grant of summary judgment here is unlike that in *Scheiding*.  Scheiding sued hundreds of defendants, including

Dinwiddie.  (*Scheiding*, *supra*, 69 Cal.App.4th at p. 67.) Dinwiddie conducted no discovery, and the plaintiff was not asked a single question at his deposition about Dinwiddie.  (*Id*. at p. 67.)  Dinwiddie obtained summary judgment based on the plaintiff's discovery responses.  (*Ibid*.)  The Court of Appeal reversed, concluding that "because plaintiff was never asked about Dinwiddie, it would be unreasonable to infer that he had no other information linking Dinwiddie to his illness."  (*Id*. at p. 80.)  But here, Easterling was specifically asked about Henkels at his deposition and provided what little specific information he had about Henkels in his interrogatory responses.

Appellant contends that responses to "standard" interrogatories are insufficient to show the Easterlings did not have, and could not reasonably obtain, evidence to prove their claims.  In our view, there is no such general rule.  The fact that the plaintiff responded to "standard" interrogatories in *Scheiding* was relevant because they "did not contain questions aimed specifically at the presence or absence of Dinwiddie at jobsites." (See *Scheiding*, *supra*, 69 Cal.App.4th at pp. 81, 83; *Weber v. John Crane, Inc.* (2006) 143 Cal.App.4th 1433, 1442 ["We do not hold that a defendant never will be able to meet its initial burden of persuasion without propounding special interrogatories"].)  In contrast here, the interrogatories asked Easterling about the activities and materials of each contractor, including Henkels, that allegedly exposed him to asbestos.  Easterling named Henkels but provided only broad categories of activities and materials parroting the complaint.

Contrary to appellant's assertion, the instructions to "furnish all information" in response to the interrogatories are akin to "contention interrogatories."  "An interrogatory may

12

relate to whether another party is making a certain contention, or to the facts, witnesses, and writings on which a contention is based." (§ 2030.010, subd. (b); *Rodriguez v. Brill* (2015) 234 Cal.App.4th 715, 720.) The interrogatories required Easterling to "furnish all information that is available," including describing in detail the asbestos-containing materials to which he was exposed, and the nature and manner of the exposure. The interrogatories also required him to "IDENTIFY all PERSONS with knowledge of facts supporting YOUR response to this interrogatory" and "IDENTIFY all DOCUMENTS which support YOUR response to this interrogatory." He responded with a long list of categories of materials and generalized work activities, and did not identify any witnesses (other than himself and his wife) or specific documents. "If plaintiffs respond to comprehensive interrogatories seeking all known facts with boilerplate answers that restate their allegations, or simply provide laundry lists of people and/or documents, the burden of production will almost certainly be shifted to them once defendants move for summary judgment and properly present plaintiffs' factually devoid discovery responses." (*Andrews v. Foster Wheeler LLC* (2006) 138 Cal.App.4th 96, 107, fn. omitted (*Andrews*).)[3] As in *Andrews*, the Easterlings "provided little, if any, substantive information" and did "not state specific facts showing that [he] was actually

[3] The discovery requests did not ask about the second element of asbestos claims—whether the exposure was a substantial factor in causing illness. We do not discuss this issue because "the plaintiff must first establish some threshold *exposure* to the defendant's defective asbestos-containing products" before showing exposure was a "substantial factor" in causing injury. (*Rutherford v. Owens-Illinois, Inc., supra,* 16 Cal.4th at p. 982, fn. omitted.)

13

exposed to asbestos-containing material" from Henkels. (*Id*. at p. 104.) Summary judgment was proper based on "discovery responses . . . devoid of material facts showing that [Easterling] had been exposed" to a Henkels product. (*Id*. at p. 106.)

Easterling was also questioned about Henkels at his deposition. His testimony was unclear whether Henkels exposed him to asbestos-containing materials. Once Henkels presented Easterling's factually devoid discovery responses, the burden shifted to the Easterlings "to establish a triable issue of fact regarding causation." (*Andrews*, *supra*, 138 Cal.App.4th at p. 107.) They did not do so with "specific facts" to establish direct, circumstantial, and inferential evidence that Henkels exposed Easterling to asbestos. (See *Andrews*, *supra*, 138 Cal.App.4th at p. 101; § 437c, subd. (p)(2) ["The plaintiff . . . shall not rely upon the allegations or denials of its pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to the cause of action"].) And because the Easterlings presented no facts in opposing summary judgment, there was "no issue requiring a trial." (*Aguilar*, *supra*, 25 Cal.4th at p. 843.)

Although Easterling mentioned drywall, joint compounds, and floor tiles, "this answer *assumes,* without any evidentiary support" that they "contained asbestos." (*Casey v. Perini Corp.* (2012) 206 Cal.App.4th 1222, 1230.) In *Casey*, the plaintiff stated that the defendant caused asbestos-containing material to fall from the ceiling onto others, and said the defendant swept up dust and debris spreading asbestos into the air. (*Ibid*.) But he was "unable to identify the brand name, manufacturer or supplier of any of the materials" or name other persons "having

14

knowledge of the amount or extent of asbestos exposure." (*Id.* at pp. 1226, 1231.) Here, Easterling similarly stated in his deposition that Henkels's employees installed drywall, but did not say that this released asbestos into the air. His interrogatory responses did not describe which of Henkels's products or activities released asbestos into the air. As in *Casey*, Henkels shifted the burden of proof because Easterling made "little more than general allegations" and did not "state specific facts showing that [he] was actually exposed to asbestos and/or asbestos-containing products due to [Henkels's] activities." (*Id.* at p. 1230.)

This case is unlike *Weber v. John Crane, Inc.*, *supra*, 143 Cal.App.4th 1433, upon which appellant relies. There, "the deposition and interrogatories contained no questions aimed specifically at the presence or absence of the defendant at jobsites and there was no 'all facts' interrogatory on the subject." (*Id.* at pp. 1439–1440.) In contrast here, the interrogatories were "designed to elicit information" about Easterling's asbestos exposure (*id.* at p. 1440) because they "required [him] to furnish all information that is available to the plaintiff" describing the asbestos-containing materials and the nature or manner in which Henkels's work exposed him to asbestos. And the plaintiff in *Weber* named several coworkers who might have information about the exposure. (*Id.* at p. 1436.) But Easterling could name no one who could provide additional information. We conclude summary judgment was properly granted.

*Continuance*

Appellant contends the trial court improperly denied a continuance to depose Henkels's person most knowledgeable. (§ 437c, subd. (h).) We again disagree.

15

"A declaration in support of a request for continuance under section 437c, subdivision (h) must show: '(1) the facts to be obtained are essential to opposing the [summary judgment] motion; (2) there is reason to believe such facts may exist; and (3) the reasons why additional time is needed to obtain these facts.' " (*Cooksey v. Alexakis* (2004) 123 Cal.App.4th 246, 254.)  If the required showings are made, a continuance is mandatory.  (*Id.* at pp. 253–254.)  The motion may be denied when diligence in seeking earlier discovery is not shown.  (*Id.* at p. 257; accord, *Braganza v. Albertson's LLC* (2021) 67 Cal.App.5th 144, 156.)  We review denial of a continuance for abuse of discretion.  (*Cooksey*, at p. 254.)

The trial court did not state its reasons for denying the continuance.  But the record does not show an abuse of discretion because the trial court could conclude the Easterlings did not diligently seek discovery.  Based on Easterling's age and medical condition, the Easterlings understandably requested and received trial preference for September 2024.  (§ 36, subds. (a) & (f).)  Henkels was required to calendar the summary judgment hearing before the September trial date.  Obtaining an early trial date imposed an obligation on the Easterlings to conduct discovery quickly.  They filed their lawsuit in January 2023, but did not serve their request for production of documents until November 2023.  After Henkels responded in December 2023 that it had no responsive records regarding asbestos-containing materials, the Easterlings waited four and a half months, until May 2024, to serve their PMQ deposition notice.

Nor did the Easterlings show that a continuance was needed to "obtain necessary discovery" of "facts essential to justify opposition [that] may exist."  (§ 437c, subd. (h).)  Henkels's

16

verified response to the document production request stated it did not supply or use asbestos-containing materials and consequently had no records of such materials. The Easterlings presented no evidence to the contrary. Seeking the same nonexistent information through a deposition notice and accompanying request for production of documents was not necessary to respond to the motion for summary judgment. And the declaration supporting the Easterlings' request for continuance did not explain how deposing Henkels's PMQ would lead to facts essential to opposing summary judgment. Accordingly, the trial court did not abuse its discretion in denying the continuance.

DISPOSITION

The judgment is affirmed. Henkels shall recover its costs on appeal.

NOT TO BE PUBLISHED.

BALTODANO, J.

We concur:

GILBERT, P. J.

YEGAN, J.

17

John P. Doyle and Randy Rhodes, Judges

Superior Court County of Ventura

_____

Keller, Fishback & Jackson, Stephen M. Fishback; The
Arkin Law Firm and Sharon J. Arkin for Plaintiff and Appellant.
Klinedinst, Robert G. Harrison, Robert M. Shaughnessy
and C. Nicole Pelcic for Defendant and Respondent.