Filed 8/28/25  Scoggins v. ViacomCBS CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ALYCE M. SCOGGINS et al.,<br><br>      Plaintiffs and Appellants,<br><br>v.<br><br>VIACOMCBS, INC.,<br><br>      Defendant and Respondent. | A170859<br><br>(Alameda County Super.<br>Ct. No. RG21104466) |

David Scoggins was diagnosed with mesothelioma, a cancer caused by his exposure to asbestos.  Scoggins filed a personal injury action against ViacomCBS, formerly known as Westinghouse Electric Corporation (Westinghouse), among other defendants, alleging that he inhaled asbestos while working with and around Westinghouse products and contractors at worksites of his former employer, Pacific Gas & Electric Company (PG&E). After his death, Scoggins's surviving relatives (collectively, plaintiffs) pursued his claims along with their survivorship claims.

Plaintiffs argue that the trial court erred in excluding the declaration of their expert witness, Jerome Spear, on the ground that he was untimely designated, and without considering whether any untimeliness was unreasonable within the meaning of Code of Civil Procedure section

1

2034.300.[1]  The exclusion, they claim, left uncontroverted Westinghouse's expert evidence that its products could not be shown to have caused Scoggins's mesothelioma, and resulted in the termination of the case against Westinghouse by grant of summary judgment.

In response, Westinghouse adheres to its view that the designation was untimely and that plaintiffs' conduct was unreasonable.  It further argues that, even if the designation was timely served, plaintiffs were not prejudiced both because they failed to show error in the court's conclusion that they did not produce sufficient evidence of Scoggins's threshold exposure to asbestos-containing dust from Westinghouse products, and because Spear's declaration was subject to exclusion on the additional ground that it lacked foundation.

As discussed below, we conclude that Westinghouse's objection that plaintiffs did not timely designate Spear as an expert was not well taken.  Moreover, because at this stage of the case we are required to view the evidence in the light most favorable to plaintiffs, we find that they were prejudiced by the erroneous exclusion of his declaration.  We therefore reverse.

## BACKGROUND

### I.

The complaint alleges that Scoggins "was employed as a mechanic with [PG&E] from approximately 1968 to 2009.  During and throughout these years, [Scoggins] worked in various PG&E sites where he was exposed to asbestos.  [He] worked as a mechanic and had other job titles and was exposed to asbestos in numerous ways, including . . . working on and/or

---

[1] Unless otherwise stated, all further statutory references are to this code.

2

around turbines, boilers, pumps and valves at various PG&E power plant locations . . . . [Scoggins] was further exposed through his work around other trades, including boilermakers, pipefitters, welders, mechanics, carpenters, iron workers, insulators, and electricians. [Scoggins] worked closely to a variety of trades that were working on asbestos-containing insulation, generators, boilers, and often worked near tradesmen working on asbestos-containing pipe insulation, valves, steam traps, pumps, furnaces, and other equipment. All of these activities exposed [Scoggins] to asbestos."

To establish that his exposure to asbestos for which Westinghouse had responsibility caused his mesothelioma, plaintiffs provided Scoggins's own deposition testimony, the declaration and deposition testimony of Thomas Tellez, deposition testimony from Raymond Friend, and Spear's expert declaration. The evidence from Scoggins, Friend, and Tellez established that Scoggins worked around some Westinghouse equipment in various power plants; that some of this equipment contained asbestos; and that when work was done on this equipment—often by outside contractors, including Westinghouse contractors—the work generated dust that became airborne and that Scoggins and his coworkers breathed. Scoggins also cleaned up around the work that others performed; his sweeping caused the dust to become airborne and he would breathe it.

Westinghouse's corporative representative, Douglas M. Ware, testified that Westinghouse had equipment at the PG&E locations where Scoggins worked roughly in the time period that he worked there, and that various components of that equipment contained asbestos and/or were designed to work with asbestos-containing parts. Westinghouse argued, however, that plaintiffs' evidence was insufficient to show that Scoggins's work exposed him to asbestos from Westinghouse equipment. Moreover, Westinghouse's expert,

3

Dennis C. Ertel, declared that whatever exposure Scoggins had would not be a substantial factor in causing his mesothelioma to a reasonable scientific certainty. He also opined that the Westinghouse electrical products that Scoggins had worked around, even assuming they contained asbestos, would not have resulted in "significant emissions of asbestos" from the work Scoggins described doing.

In his expert declaration, Spear opined, based on his review of the scientific literature, that "gaskets and packing used in equipment (such as pumps and valves) for high temperature and/or high pressure applications installed prior to the late 1980s was likely asbestos-containing," that the same was true for "thermal system insulation . . . installed prior to the mid-1970s," and that "asbestos-reinforced plastics (e.g., Bakelite) was commonly used in electrical panels and switchgear until the early 1980s," and even though such plastics were considered encapsulated, the asbestos fibers within them could be released under certain circumstances or could protrude from the surface. Spear further opined that "within a reasonable degree of scientific certainty . . . Scoggins' presence around others working with asbestos-containing gaskets on Westinghouse turbines and pumps, the work of Westinghouse contractors around Mr. Scoggins, Mr. Scoggins [sic] work during overhauls, and Mr. Scoggins' work with Westinghouse motor control centers, caused him to breathe asbestos dust well above background levels" and as a result, "within a reasonable degree of scientific certainty . . . such exposure significantly increased Mr. Scoggins [sic] risk of developing the mesothelioma that eventually took his life."

**II.**

Trial was set for February 13, 2024, with expert discovery set to close January 29. On December 1, 2023, plaintiffs served Westinghouse with a

4

demand for expert disclosures pursuant to section 2034.210, specifying December 20, 2023, as the date for the exchange.  On December 19, plaintiffs served their designation, listing five experts.  On December 22, plaintiffs filed an amended designation adding Spear as an expert witness.  On December 28, Westinghouse served plaintiffs with an objection to the amendment as untimely and not compliant with the procedures for augmenting their disclosures.  The objection explained:  "Under California Code of Civil Procedure 2034.230(b), the date for the exchange of expert witness information based on the date of Plaintiffs' Demand for Exchange of Expert Witness Information was December 21, 2023."  It also stated that plaintiffs had "timely submitted" their (original) designation of expert witnesses "on December 21, 2023,"[2] and that Westinghouse itself had "made complete and timely expert designation," referencing the electronic service transaction number but without mentioning the date of it.

### III.

Westinghouse moved for summary judgment on the ground that plaintiffs could not establish causation as to any of their claims against it.  Plaintiffs submitted the Spear declaration with their opposition, and Westinghouse, with its reply, filed objections to the declaration and moved to strike it in its entirety, both on the ground that the amended designation that identified Spear as an expert was untimely and that the declaration lacked foundation (among other evidentiary objections).  Westinghouse included a copy of the December 28, 2023, objection it had served on plaintiffs—which contained the statement that the designations were due on December 21 based on section 2034.230, subdivision (b)—and otherwise did not explain

---

[2] As noted, plaintiffs had actually served their initial designation of expert witnesses on December 19, not December 21.

5

why the designation was untimely. The court issued a tentative ruling granting the motion for summary judgment that did not mention either the Spear declaration or Westinghouse's objections to its admission.

At the hearing on the motion, plaintiffs' counsel noted that she was new to the case and had not seen the objection to Spear's testimony. She commented that the tentative ruling did not address the objection. The court agreed, noting it "didn't feel the need to reach down that far." Nonetheless, when the court asked for her views on the objection, she "disagree[d] that Mr. Spear and his opinions as a whole can be excluded on the basis set forth by Westinghouse at this stage of the case," but otherwise acknowledged that she was insufficiently familiar with the facts or the law to address the substance of the timeliness objection. In response, Westinghouse's counsel reiterated that the due date for the exchange was December 21, 2023.

The court thereafter granted the motion for summary judgment. At the outset of the order, the court sustained Westinghouse's objection to the Spear declaration because "he was not identified as an expert witness by the disclosure deadline. [Citation.] Mr. Spear was subsequently listed as an expert without seeking leave of court. [Citation.] Accordingly, the court will not consider Mr. Spear's testimony." The court then found that plaintiffs had not put forth sufficient evidence to show Scoggins's threshold exposure to Westinghouse asbestos within the meaning of *Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 982 (*Rutherford*). First, the court found that plaintiffs' evidence "does not show it was likely that Mr. Scoggins was exposed to dust attributable to Westinghouse" because it was "equivocal about whether and which (if any) Westinghouse turbines were installed, repaired, or maintained when Mr. Scoggins was present for [associated] clean-up work," and the same was true as to Westinghouse pumps and motor

6

control centers.  Second, "even assuming that the dust could be attributed to Westinghouse," plaintiffs' evidence did not show that it contained asbestos: "On this evidentiary record, the trier of fact must speculate about whether the turbine coverings, the Bakelite paneling and arc chutes, or whether the dust created by Westinghouse's contractors contained asbestos to infer that Mr. Scoggins was exposed to asbestos from products or work attributable to Westinghouse."

## IV.

Plaintiffs moved for reconsideration of the court's summary judgment order.  Among other things, they argued that the designation of Spear was timely because the due date was actually December 22 (when the amended designation was served), and the failure by plaintiffs' counsel to address timeliness at the hearing was due to the belatedness of Westinghouse's timeliness argument (raised for the first time in its reply brief) and to the court not giving notice in its tentative ruling that it would address the objection.  In opposition, Westinghouse for the first time argued that, pursuant to section 2034.260, subdivision (a) and the exchange date set forth in plaintiffs' demand, the deadline for expert disclosures was December 20.  Westinghouse did not acknowledge that it had changed its position on the due date and the statutory basis for it, and in reply, plaintiffs likewise failed

to call the change to the trial court's attention.[3]  The court denied the motion, finding no new facts or circumstances justifying reconsideration of its order.

## DISCUSSION

" 'We review the trial court's summary judgment rulings de novo, viewing the evidence in a light favorable to the plaintiff as the losing party, liberally construing the plaintiff's evidentiary submission while strictly scrutinizing the defendant's own showing, and resolving any evidentiary doubts or ambiguities in the plaintiff's favor.' " (*Whitmire v. Ingersoll-Rand Co.* (2010) 184 Cal.App.4th 1078, 1083 (*Whitmire*).)  "A motion for summary judgment must be granted 'if all the papers submitted show that there is no triable issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law.'  [Citation.]  A defendant has met its burden of showing that a cause of action has no merit if it has shown that one or more elements of the cause of action cannot be established . . . .  Once the defendant has met that burden, the burden shifts to the plaintiff to show a triable issue of one or more material facts exists as to that cause of action." (*Ibid.*)

"We generally review a trial court's ruling on a motion to exclude expert testimony for abuse of discretion.  [Citation.]  But a trial court's discretion is always delimited by the statutes governing the particular issue, and 'when the exclusion of expert testimony rests on a matter of statutory

---

[3] In opposing the motion for reconsideration, Westinghouse incorrectly stated that its prior objection had been based on plaintiffs' designation of Spear having been served "after the date specified in their demand for expert exchange."  As quoted above, the objection was based on the designation having been served after December 21, 2023, a date not specified in the demand but purportedly derived from the application of section 2034.230, subdivision (b) to the December 1, 2023 date of the demand.

interpretation, we apply de novo review.' " (*Du-All Safety, LLC v. Superior Court* (2019) 34 Cal.App.5th 485, 494–495.)

## I.

Plaintiffs do not argue that the trial court erred in denying their motion for reconsideration, but maintain that the designation of Spear as an expert witness was timely served on the date it was due—December 22, 2023—and that the court erred insofar as it concluded that the deadline was December 21 as asserted in Westinghouse's objection. In response to Westinghouse's argument in its respondent's brief that the deadline was actually December 20—which it again offers without acknowledging that it had relied on a different date and theory in its objection and motion to strike—plaintiffs argue, among other things, that Westinghouse did not have standing to object to the timeliness of the designation on that basis because it had not served its own expert witness designation by December 20, 2023. In support of that argument, plaintiffs included Westinghouse's designation in a reply appendix, which Westinghouse has moved to strike (along with all references thereto in the reply brief) on the ground that it was never filed in the trial court and therefore is not part of the record on appeal.

## A.

We start with the argument Westinghouse made in the trial court when it moved to strike the declaration, because the ruling on that motion is the one plaintiffs have asked us to review. Section 2034.230, subdivision (b) states that a demand for expert exchange "shall specify the date for the exchange . . . . The *specified date of exchange shall be 50 days before the initial trial date, or 20 days after service of the demand, whichever is closer to the trial date,* unless the court, on motion and a showing of good cause, orders an earlier or later date of exchange." (Italics added.) As noted, Westinghouse

9

asserted in its objection that, under this statute, "the date for the exchange of expert witness information *based on the date of Plaintiffs' Demand* for Exchange of Expert Witness Information was December 21, 2023." (Italics added.)

Plaintiffs served their demand on December 1, 2023. While Westinghouse did not expressly say so, it evidently arrived at a due date of December 21, 2023, based on the second of the two dates specified in the statute, i.e., "20 days after service of the demand." As plaintiffs point out, however, under the terms of the statute itself, the controlling date is "whichever [one] is closer to the trial date." Here, the date closer to the trial date was the first of the two options: "50 days before the initial trial date." According to plaintiffs, taking into account the December 25, 2023 holiday, 50 days before the February 13, 2024 trial date was December 22, 2023, and plaintiffs served their designation of Spear on that date, rendering it timely. In its brief, Westinghouse does not dispute that the operative due date under section 2034.230, subdivision (b) was December 22, 2023, nor does it dispute that its motion to strike misapplied that statute to arrive instead at a due date of December 21, 2023. (As noted, its brief does not discuss its previous assertion that the exchange of information was due on that date.)

Westinghouse does contend that plaintiffs waived or invited the trial court's alleged error by their counsel's unpreparedness at the summary judgment hearing to provide a substantive argument in response to its objection. We are not persuaded. "An error is invited when a party purposefully induces the commission of error," and therefore the doctrine "contemplates ' "affirmative conduct demonstrating a deliberate tactical choice on the part of the challenging party." ' " (*Khoiny v. Dignity Health* (2022) 76 Cal.App.5th 390, 419.) Plaintiffs' counsel told the court she did not

10

agree that Spear could be excluded as a witness even though she admitted that she had not seen the objection before the hearing and was unprepared to address the relevant facts or law. As the moving or objecting party, Westinghouse had the burden to establish that the designation of Spear was untimely, and it relied on a statute that, properly read, provided that the operative due date was not the one it identified and under which the designation of Spear was timely made. While we do not fault the trial court for failing to discern the nature of the problem on its own, the mere fact that plaintiffs' counsel was ill-prepared to provide a meaningful explanation in support of her stated disagreement falls short of purposefully inducing the commission of error.[4]

## B.

Abandoning the argument it made at summary judgment, Westinghouse offers a different theory of untimeliness on appeal, albeit the one it offered in its opposition to the motion for reconsideration. It points out that plaintiffs' demand for the exchange of expert witness designations specified a date—December 20, 2023—that was earlier than *both* of the two possibilities set forth in subdivision (b) of section 2034.230. Noting that section 2034.260, subdivision (a) requires the parties to "exchange

---

[4] We note that Westinghouse's objection to the declaration was submitted with its reply brief, after which plaintiffs had no opportunity to respond to it in writing. And because the objecting party is not required to repeat its objections orally at the hearing (*Tilley v. CZ Master Assn.* (2005) 131 Cal.App.4th 464, 479), we do not think the other party waives or forfeits the right to appeal the trial court's ruling on any objection simply by failing to raise it at the hearing. (Cf. § 437c, subd. (q) [trial court need rule only on objections it deems material to its disposition and objections not ruled on are preserved for appellate review].) Accordingly, we believe the proper question in this circumstance is whether plaintiffs' counsel purposefully induced the commission of error by her statements, and we conclude that she did not.

11

information concerning expert witnesses in writing *on or before the date of exchange specified in the demand*" (italics added), it argues that, under this statute, the date specified in the demand controls notwithstanding its noncompliance with section 2034.230, subdivision (b).

We are skeptical of this argument. When two statutes involving the same subject matter appear to conflict, we have a duty to harmonize them if possible. (*People v. Warren* (2018) 24 Cal.App.5th 899, 908; *In re Marriage of Vaughn* (2018) 29 Cal.App.5th 451, 456.) The problem with Westinghouse's interpretation is that it would render meaningless the requirements of section 2034.230, subdivision (b). Harmonization requires us to give effect to both statutes. (*People v. Vessell* (1995) 36 Cal.App.4th 285, 289.) It would make little sense for the statutory scheme to specify the requirements for the demand and then insist that the opposing party comply with a demand that ignores them. The more reasonable construction of section 2034.260, subdivision (a)—and the one that harmonizes it with section 2034.230, subdivision (b)—is that its reference to "the date of exchange specified in the demand" contemplates a date that satisfied the requirements of section 2034.230, subdivision (b). That is why the requirements are there. Section 2034.260 then sets forth the requirements for the exchange of information itself, such as how it is to be made (e.g., at a meeting of the attorneys or by service), the nature of the information to be included, and the form and content of expert declarations. (§ 2034.260, subds. (a)–(c).)[5] The fact that Westinghouse, in its objection, relied on section 2034.230,

---

[5] We do not mean to suggest that a party who is aware that the date specified in the demand fails to comply with section 2034.230, subdivision (b) should not meet and confer with the opposing party about the issue— preferably well before any exchange is due.

subdivision (b) to identify the due date indicates that it did not previously understand the statutory scheme to operate in the manner it now urges.

But we need not resolve the question definitively because the theory cannot help Westinghouse here. Although we review a trial court's ruling rather than its rationale, we are generally limited to the grounds presented to the trial court and, of course, supported by the record. (See, e.g., *Wentworth v. Regents of University of California* (2024) 105 Cal.App.5th 580, 597; *Department of Personnel Administration v. California Correctional Peace Officers Assn.* (2007) 152 Cal.App.4th 1193, 1201; *Wilson v. Farmers Ins. Exchange* (2002) 102 Cal.App.4th 1171, 1174, fn. 2.) We have the discretion to entertain a new legal theory on appeal, but not when it "depends on controverted factual questions whose relevance thereto was not made to appear" in the trial court. (*Bogacki v. Board of Supervisors* (1971) 5 Cal.3d 771, 780; see *Mattco Forge, Inc. v. Arthur Young & Co.* (1997) 52 Cal.App.4th 820, 847 ["Only when the issue presented involves purely a legal question, on an *uncontroverted record and requires no factual determinations*, is it appropriate to address new theories"].)

Section 2034.300 provides that, "on objection of any party *who has made a complete and timely compliance with section 2034.260*, the trial court shall exclude from evidence the expert opinion of any witness that is offered by any party who has unreasonably failed to . . . [¶] (a) [l]ist that witness as an expert under section 2034.260." (Italics added.) The italicized language means that a party that has not timely served its own expert disclosure lacks standing to seek the exclusion of experts identified in an untimely disclosure by the other side. (*Staub v. Kiley* (2014) 226 Cal.App.4th 1437, 1446.) While plaintiffs ask us, in effect, to take judicial notice of (extra-record) evidence that Westinghouse did not serve its own expert disclosure by the newly-

asserted due date of December 20, 2023, we need not go that far. As the proponent of a new theory on appeal, Westinghouse bears the burden to show that it is supported by uncontroverted evidence in the record. Yet Westinghouse has failed to identify any evidence establishing the date on which it served its disclosures. It is true that Westinghouse represented in its objection that it had "timely" served its own disclosures, but in that document it identified the due date as December 21, 2023, further asserting that plaintiffs had "timely" served their own disclosures on that date—an assertion that contradicts its argument on appeal that the due date was December 20, 2023. Because there is no evidence in the record that Westinghouse served its own disclosures by December 20, 2023, we cannot affirm the trial court's order on a new theory that requires Westinghouse to have done so.[6]

Accordingly, we find that the trial court erred insofar as it excluded the Spear designation on the ground that plaintiffs' designation of him as an

---

[6] We agree with Westinghouse that its expert disclosures are not in the record even though, as plaintiffs argue, its objection to plaintiffs' designation of Spear referenced them. (See *Glassman v. Safeco Ins. Co. of America* (2023) 90 Cal.App.5th 1281, 1307.) Our opinion accordingly does not rely on evidence showing the date that Westinghouse served its disclosures; it is based on the absence of such evidence from the record. We otherwise deny Westinghouse's motion to strike. In the motion, Westinghouse argues that plaintiffs have "doubly waived" their contention that it lacks standing to seek the exclusion of the Spear declaration because they did not raise that argument in the trial court or in their opening brief on appeal. We disagree. It is irrelevant that plaintiffs did not raise the standing problem in the trial court because Westinghouse did not assert a due date of December 20, 2023 in connection with its motion for summary judgment—the only ruling before us. Likewise, plaintiffs were not required to anticipate in their opening brief that Westinghouse would rely on an argument that it did not advance at summary judgment and that was unsupported by the evidence before the trial court.

expert was untimely.  Because we conclude that the designation was timely, we need not address plaintiffs' alternative argument that their conduct was reasonable.

## II.

Westinghouse argues that even if the trial court erred in excluding the Spear declaration as untimely, there was no prejudice, first, because plaintiffs have not shown error in the court's ruling that they did not produce sufficient evidence that Scoggins was exposed to a threshold level of asbestos from Westinghouse products, and second, because Spear's declaration—which addressed "substantial factor" causation rather than threshold exposure— was also subject to exclusion based on Westinghouse's additional objection (not ruled on by the trial court) that Spear's opinions were not based on sufficient facts or data.  (See *Rutherford, supra,* 16 Cal.4th at p. 982 [a plaintiff suing for harm resulting from asbestos exposure must (1) show some "threshold exposure" to asbestos from the defendant's products; and (2) establish to a reasonable medical probability that a particular exposure or series of exposures was a substantial factor in causing the injury]; *Lineaweaver v. Plant Insulation Co.* (1995) 31 Cal.App.4th 1409, 1416 (*Lineaweaver*).)  We find neither argument persuasive.

As to threshold exposure, Westinghouse argues that the trial court was correct to conclude that the evidence of Scoggins's exposure to Westinghouse products was inadequate.  Plaintiffs point to the testimony of both parties' witnesses as establishing threshold exposure.  While we agree that the plaintiffs' showing on the issue could be stronger, viewing all of the evidence in the light most favorable to plaintiffs, and drawing all inferences in their favor, we conclude that plaintiffs have established a triable issue of fact precluding summary judgment.

15

To begin with, there is no dispute that Westinghouse's asbestos-containing products, and/or Westinghouse products designed to work with asbestos-containing components—including turbines, generators, and associated components, like motor control centers—were installed in at least some of Scoggins's worksites at the time he worked at those sites. Ware, Westinghouse's representative, testified to those facts. There is also no dispute that Scoggins provided peripheral assistance during overhauls of turbines and generators at PG&E plants; worked around Westinghouse contractors while they completed the overhauls (which required the turbine covers and their insulating blankets to be removed and replaced); and that he cleaned up around and after the contractors. Those activities caused the dust from the work to become airborne and him to breathe it. Scoggins testified that Westinghouse and General Electric were "the two primary brands" of turbines at the PG&E sites where he worked. He testified that he performed similar work with generators at PG&E worksites and that General Electric and Westinghouse were also the primary brands of generators he worked around.

Friend and Tellez confirmed that Scoggins worked in the vicinity of Westinghouse equipment at PG&E plants and that he assisted with overhauls. Tellez confirmed that the overhauls and other work would produce significant dust and that the turbines were either General Electric or Westinghouse brands. He also confirmed that contractors from three companies, one of which was Westinghouse, would overhaul PG&E turbines. He recalled work on asbestos-containing "pumps and valves all over these power plants, too many to count."

Although the witnesses were not able to state specifically how often or for what duration Scoggins was exposed to Westinghouse asbestos, the

16

evidence was sufficient to create a triable issue of fact about whether Scoggins was exposed to Westinghouse's asbestos-containing products at his PG&E worksites, both directly and as a bystander to Westinghouse's contractors' work. Scoggins, Friend, Tellez, and Ware testified that Westinghouse products were at Scoggins's worksites; Scoggins and Tellez testified that Westinghouse was one of two primary brands of equipment that they worked around; and Friend, Scoggins, and Tellez testified to Scoggins completing the type of work on the types of equipment that Westinghouse supplied that would liberate asbestos dust into the air. (*Lineaweaver*, *supra*, 31 Cal.App.4th at p. 1420 ["plaintiff has established that defendant's product was definitely at his [refinery] work site and that it was sufficiently prevalent to warrant an inference that plaintiff was exposed to it during his more than 30 years of working with and around asbestos throughout the refinery"]; compare *id.* at pp. 1420–1421 [insufficient evidence of exposure as to two other plaintiffs where neither could state that defendant's asbestos-containing product was present on their ship and instead relied on generalized testimony about the product being used similarly on ships and at shipyards in the same geographical area]; see also *Urbach v. Okonite Company* (Mo.Ct.App. 2017) 514 S.W.3d 653, 660 [identifying defendant's asbestos-containing product "as one of a limited number of brands of asbestos[-containing products] he used over the course of his career"]; cf. *Webb v. Special Electric Co., Inc.* (2016) 63 Cal.4th 167, 193, fn. 12 ["Plaintiffs introduced evidence that [decedent] was exposed to dust from [a manufacturer's] products containing trace amounts of crocidolite [asbestos] at roughly the same time [defendant] was supplying crocidolite asbestos to [the manufacturer]. While evidence of the link could be stronger, it is nonetheless

sufficient for the jury to have found that [defendant's] asbestos was a substantial factor in causing [the decedent's] mesothelioma"].)

Westinghouse contends that Ware's testimony establishes that the equipment around which Scoggins worked was not supplied by Westinghouse or not intended or likely to be disturbed for maintenance and that "the record is replete with concessions" by plaintiffs' witnesses about their lack of knowledge that dust was released specifically from Westinghouse equipment. But the cited testimony from Ware is not definitive, and at summary judgment we view the evidence—including potentially conflicting evidence— in the light most favorable to the nonmoving party, plaintiffs here. (*Whitmire*, *supra*, 184 Cal.App.4th at p. 1083.) Any imprecision in the witnesses' testimony, arguable inconsistencies between Tellez's declaration and deposition testimony, or indication that Westinghouse equipment and/or activities were not the only source of asbestos at Scoggins's worksites may impact the weight of the evidence and perhaps Westinghouse's proportionate share of responsibility for Scoggins's cumulative exposure to asbestos, not whether any exposure occurred at all. Unlike in *Davis v. Foster Wheeler Energy Corp.* (2012) 205 Cal.App.4th 731, 735–736, Westinghouse has not identified portions of Tellez's declaration and deposition testimony that are so internally inconsistent that they should be disregarded entirely. We similarly cannot choose between the conflicting opinion testimony of Ertel and Spear at summary judgment.

Both parties point to different cases in support of their position, but we have not found a case sufficiently analogous to be determinative. (See, e.g., *Turley v. Familian Corp.* (2017) 18 Cal.App.5th 969, 973–975, 981 [testimony by decedent's coworker that he ordered defendant's asbestos-containing gaskets for use at decedent's worksite for several years while decedent

18

worked there and observed decedent working with the gaskets]; *Hernandez v. Amcord, Inc.* (2013) 215 Cal.App.4th 659, 664–665, 673–674 [testimony by decedent's brother that he worked with decedent on weekends including at times by using defendant's asbestos-containing product to stucco homes; in those instances, decedent would cut open and pour out the bags containing defendant's product, creating visible dust]; *Urbach v. Okonite, supra*, 514 S.W.3d at pp. 663, 664 [evidence "established the type of work [decedent] performed . . . and the products he would have used in that role. Furthermore, [a former coworker's] testimony contains direct evidence of exposure" and there was evidence of bystander exposure].) With respect to the elements of causation, each case turns on its own unique facts. (*Lineaweaver, supra*, 31 Cal.App.4th at p. 1417.) Given the facts presented here, we conclude that a jury would have had sufficient evidence to draw a reasonable inference of threshold exposure and from there—relying on the Spear declaration—there was a sufficient basis to find that Scoggins's exposure to Westinghouse's asbestos was a substantial factor in causing his mesothelioma to a reasonable medical certainty.

Westinghouse also argues that, even if the trial court had not excluded the Spear declaration as untimely, there was no prejudice because the declaration was subject to exclusion for lack of foundation. According to Westinghouse, Spear's testimony was not based on sufficient factual evidence to establish that Scoggins's exposure to Westinghouse asbestos was a substantial factor in causing his mesothelioma. Plaintiffs contend that the evidence underlying Spear's testimony is the same as that on which Ertel relied for *his* expert testimony. But that is not exactly true: As Westinghouse points out, Spear's declaration states he relied on only (1) the transcript of Tellez's deposition, (2) Ertel's declaration, and (3) a post-mortem

19

study of Scoggins's lung tissue, and therefore he appears not to have considered Scoggins's own testimony, Tellez's declaration, or Friend's testimony. Ertel, by contrast, relied primarily on Scoggins's deposition testimony and Ware's declaration. Still, in his declaration, Spear recounts the basic facts of exposure from Tellez's deposition that he relies on, including, as he summarizes, identifying the PG&E plants where Tellez and Scoggins worked together; that "Westinghouse was one of the most prevalent brands of turbines at these power plants"; and that Westinghouse contractors worked on PG&E turbines and disturbed asbestos-containing materials in the process. Consequently, Westinghouse's argument that "there are no predicate facts on which [Spear] can base his opinions and he speaks to irrelevant activities and potential exposures" is not persuasive.

While the facts underlying Spear's testimony are somewhat sparse, Westinghouse reaches too far in its reliance on *Casey v. Perini Corp.* (2012) 206 Cal.App.4th 1222, 1232–1236 (*Casey*) and *Shiffer v. CBS Corp.* (2015) 240 Cal.App.4th 246, 253 (*Shiffer*). In *Casey*, the excluded expert testimony lacked foundation because as evidence of exposure the expert relied solely on a presumption incorporated into protective OSHA regulations "that buildings constructed before 1980 were built with . . . asbestos-containing materials." (*Casey v. Perini Corp.*, at p. 1233.) "Notably absent" from the record in that case was "any factual support for the proposition that the challenged jobsites contained asbestos during the relevant time period." (*Ibid.*) Because no fact witnesses could testify to the presence of asbestos at the plaintiff's jobsites, the expert's testimony lacked evidentiary foundation. (*Id.* at pp. 1234–1236.)

In *Shiffer*, as here, plaintiffs' experts did not consider the full "universe" of facts of exposure that plaintiffs had submitted as evidence and another division of this court affirmed the trial court's exclusion of the

20

testimony as lacking foundation. (*Shiffer*, *supra*, 240 Cal.App.4th at p. 253.) Critically, however, the underlying fact testimony in *Shiffer* established that the bulk of the installation of defendant's asbestos-containing turbine and related components was complete when plaintiff James Shiffer arrived at the project site, and after his arrival the only installation that remained was of equipment as to which there was no evidence of asbestos content. (*Id.* at pp. 252–253.) Because there was no fact evidence establishing Shiffer's exposure to defendant's asbestos-containing product at a time when asbestos could be released from that equipment, there was no basis for the expert's testimony linking Shiffer's mesothelioma to any purported exposure to defendant's asbestos. (*Id.* at p. 253.)

Finally, given our preceding discussion of the adequacy of the evidence of threshold exposure, we similarly reject Westinghouse's argument that, considering all of the evidence in the case—not just that specified by Spear as the basis for his testimony—there was insufficient foundation to support Spear's opinion. Spear's opinions were supported by an adequate factual basis and would not properly have been excluded on foundation grounds.

Accordingly, we conclude that the erroneous exclusion of the Spear declaration was prejudicial.

## DISPOSITION

The judgment is reversed.  Plaintiffs are entitled to recover their costs on appeal.

GOLDMAN, J.

WE CONCUR:

STREETER, Acting P. J.
CLAY, J. *

---

*Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.